## A. M. ROBINSON v. CHARLES T. MELVIN.

1. QUESTIONS OF FACT; *Examination de novo, by Appellate Court.* Where all the material testimony on a motion to discharge an attachment is in affidavits, or other written evidence, the questions thereon are presented to this court under nearly the same conditions as to the district court; and while the judgment of that court is entitled to consideration, and may in doubtful cases turn the balance in favor of affirmance, yet this court may properly in many cases proceed to examine the questions as though they were in the first instance presented here.

2. ATTACHMENT; *When not Authorized.* Where it appeared that the defendant subsequently to the contract upon which the plaintiff's cause of action arose, had made purchases of three different tracts of land in his wife's name, paying therefor less than $500 in cash and personal property, that his indebtedness outside of plaintiff's claim was about $2,200; that part of this indebtedness was secured by mortgage on real estate in the same county in which the controversy arose and the parties resided, worth $2,000; and it also appeared that these purchases in his wife's name were in pursuance of a promise made years before, and at the time of his marriage, with his wife that he, a minister of the gospel, would give her all the fees received for performing the marriage ceremony, and that such fees exceeded the amount of such purchases; that the property owned by himself and wife was the proceeds of their mutual labor, and that he was possessed of property in his own name within the reach of the process of the court more than sufficient to pay all his indebtedness, including the plaintiff's claim; and that in addition he was at the time exchanging property outside of the state for real estate in that county of greater value than the amount of plaintiff's claim, and the title to which he was taking in his own name: *held,* that the allegation that the defendant was about to convert a part of his property into money for the purpose of placing it beyond the reach of creditors, and had assigned, removed and disposed of a part with the intent to defraud, hinder and delay his creditors, was not sustained, and that the attachment should be discharged.

*Error from Lyon District Court.*

ROBINSON sued *Melvin* to recover an alleged indebtedness of $1,150, and upon an affidavit therefor obtained an order of attachment against defendant's property. On motion, supported by affidavits, the district court, at the March Term

1874, discharged said attachment. From this decision and order of the court, *Robinson* appeals, and brings the case here on error. The facts are sufficiently stated in the opinion. No briefs on file.

*J. V. Sanders,* and *E. S. Waterbury,* for plaintiff.

*Buck & Cunningham,* and *R. M. Ruggles,* for defendant.

The opinion of the court was delivered by

BREWER, J.: We are asked to review an order of the district court of Lyon county discharging an attachment. The grounds for the attachment were, that the defendant was "about to convert a part of his property into money for the purpose of placing it beyond the reach of his creditors, and had assigned, removed and disposed of a part of his property with the intent to defraud, hinder, and delay his creditors." The cause of action stated in the petition grew out of a contract between the parties, of date March 17th, 1873, whereby the defendant agreed to build a house on a certain lot and then convey the lot and improvements to plaintiff. At the time of the contract defendant received a gold watch and chain valued at $200, and $32.50 in cash, as part payment. Nothing further was paid by plaintiff directly to defendant, though relying on the contract plaintiff built a barn upon the lot. Subsequently the defendant conveyed the lot to a third party, and hence arose this action for breach of contract. Defendant claims by his affidavit that the plaintiff was the party which broke the contract, and that the latter has no claim upon him for any amount whatever. That however is a question properly to be determined by a jury, and upon oral testimony, rather than upon affidavits, and on this motion. In support of the attachment plaintiff introduced several affidavits showing indebtedness on the part of the defendant to different parties amounting in the aggregate, and exclusive of plaintiff's claim, to about $2,200. Some of this was secured by mortgages, and some had been standing for several months. He also showed that the only property he had been

able to find standing in defendant's name was a farm which was valued by real-estate men at $2,000, and upon which were the mortgages spoken of; also, that since the contract with plaintiff defendant had bought one lot for which he gave the gold watch and chain received from plaintiff, another lot for which he paid $101, and ten acres for which he gave a horse valued at $150, and his note and mortgage upon said ten acres for $200; and the title to all these pieces of property he had taken in his wife's name. On the other hand, the defendant's affidavit showed that he was a minister, and authorized to perform the marriage ceremony; that when he married his present wife he promised to let her have for her own use all the fees he might receive for such services, and that these fees had amounted to $500 or $600; that at the time of his marriage he was worth about $400, and she nothing, and that all the property they had since owned or controlled had been the proceeds of their mutual labor; that the property which had been placed in his wife's name at no time exceeded or even equaled in value the amount of the marriage fees above named; that he himself was solvent, and had property in this state not exempt from execution worth at least $2,000, and probably $3,000, over and above all his debts, exclusive of the plaintiff's claim, the validity of which he denied, (though the items of his property, other than the farm heretofore spoken of, were not designated;) that in addition he owned 320 acres of land in Wisconsin, which he had traded to a party in Emporia for 640 acres of land in Lyon county and two lots in the city of Emporia; that the deeds had been made out and were in the possession of Almerin Gillett of Emporia, waiting to be delivered whenever a defect in the chain of title to the Wisconsin lands was removed, and that he had received information from Wisconsin that a missing deed, the only defect, had been found and would be immediately recorded; that the deed to said lands and lots was to himself, and not his wife, and that said property was worth $1,500 to $2,000. Other matters appeared in the several affidavits, (for they were many, and quite lengthy,)

but these are the principal facts. Upon these facts ought the attachment to have been sustained, or discharged? We have examined the question as though it were an original question first presented to us, and not as reviewing the ruling of the district court. This we may properly do, for except as to some immaterial matters the whole testimony was in writing, and therefore comes to us in about the same way as to the district court. It is doubtless true, that the judgment of the district court even upon written testimony, is entitled to consideration, and in many doubtful cases may sometimes turn the balance in favor of affirmance; but for reasons to be hereafter noticed, we have preferred to examine this as an original question. And it seems to us that the attachment ought to have been discharged. It is unnecessary to affirm the validity of the agreement between defendant and his wife, that she should have the marriage fees as her individual and separate property, and yet it would be difficult to deny the justice or propriety of setting apart to the wife some portion of the property which is the proceeds of their joint labor. At any rate, such an agreement tends to overthrow the evil intent which might otherwise be inferred from the fact of placing property in her name, and to show that the act was in pursuance of a purpose formed long anterior to the present difficulties, and not in consequence of those difficulties. Especially is this significant in view of the solvency of the defendant, as shown by his own testimony, and the exchange by which he was at the time placing an additional amount of property within the jurisdiction of the court in which this controversy was pending. Not only has he means in this state with which to pay any judgments that may be rendered against him in this action, but at the very time he is charged to have been disposing of his property with intent to delay, hinder and defraud his creditors he is trading property outside of the state for real estate in Lyon county worth more than the plaintiff's claim. Such conduct is so manifestly at variance with any evil intent as against his creditors that it clearly overthrows any that might be inferred from the purchases in

his wife's name. And in addition, in reference to such purchases, while the amount invested is small, (only $400 or $500,) he is thereby converting property easy of concealment, and easy of sale, such as a watch and chain, and a horse, into real estate incapable of concealment, and difficult of sale. On the whole evidence it seems to us that the allegations of the affidavit for attachment are not sustained, and that it ought to have been discharged.

One other question is raised by counsel. After the dissolution of the attachment plaintiff moved to have the order dissolving the attachment set aside and the matter referred to a judge *pro tem.* on the ground of the interest of the judge, and in support of such motion filed an affidavit alleging that subsequent to the dissolution he had ascertained that the judge was security for defendant on a past-due note of $125, and that while the motion to dissolve was pending before him he had received from defendant a chattel mortgage on a span of horses worth not over $120 to indemnify him. We have taken this case as if originally presented to us, and considered it independent of any prior adjudication, because even though the judge was disqualified by reason of interest it would be wrong to the parties to remand it for examination before a judge *pro tem.* if it was reasonably clear to us that the attachment ought upon the evidence to have been discharged. That would be simply making additional costs with the same ultimate result. We do not mean to decide that the judge was actually disqualified by interest, the showing having been entirely *ex parte;* but we cannot forbear remarking that it is the duty, as it is generally the wish of a judge, to avoid sitting in judgment upon questions in which he has a direct even though slight pecuniary interest.

The judgment will be affirmed.

All the Justices concurring.