## H. V. BUNDREM v. RALPH DENN.

1. ATTACHMENT; *Validity of Cause of Action; Practice.* While the court cannot inquire into the validity or justice of the cause of action upon the hearing of a motion to dissolve and vacate an order of attachment, yet it may inquire into the alleged existence of the grounds of attachment set forth in the affidavit, and if such inquiry incidentally refers to some of the allegations of the petition, this does not compel the court to refuse consideration of the motion or suspend the decision until the final trial of the cause. A dissolution of the attachment does not defeat the action.

2. ATTACHMENT, *Dissolution of, No Error.* By the terms of a contract between the parties to this action, plaintiff was to ship from his store in E. to the defendant at C., from time to time, as needed, such goods as are usually kept in a retail harness store. The defendant was to receive the goods and sell the same for cash in his own name for the plaintiff at C., upon commission, and was to remit as fast as he received from sales a sufficient amount of money to pay for remitting the same. He was also allowed to sell upon short time to responsible parties, whose accounts he would guarantee. In connection with the sale of harness, he also carried on a small grocery store. Prior to undertaking to sell goods for plaintiff, he had been a farmer all his life, and knew nothing about the principles of book-keeping. Owing to his want of knowledge about keeping books, and his incompetency for the business in which he was engaged, the accounts for credit sales of harness and groceries became mingled together upon the books. Upon an attempt to settle between the parties, it was impossible to separate the accounts from each other, owing to the loss of one of his books and the awkward manner in which he had kept his accounts, but the total outstanding credits largely exceeded any deficiency of goods otherwise unaccounted for. Plaintiff brought his action to recover the value of the goods alleged to have been converted to defendant's own use, and procured an order of attachment on the ground that he had fraudulently incurred the liability. The testimony offered on a motion to dissolve the attachment showed that the defendant had failed to make any statement of his account, although it had been frequently demanded, and often promised, but did not show

that he had converted to his own use any of the property with which he had been intrusted, or its proceeds. The court granted a dissolution of the attachment. *Held,* No error.

*Error from Chase District Court.*

ACTION brought by *Bundrem* against *Denn,* to recover $1,200, the value of goods alleged to have been by the defendant unlawfully converted to his own use. At the May Term, 1880, the court sustained defendant's motion to discharge the attachment which had been granted in the action. This ruling the plaintiff brings here. The opinion states the facts.

*Sterry & Sedgwick,* and *Peck, Ryan & Johnson,* for plaintiff in error:

1. If any liability was incurred at all, under the pleadings and facts, it was the result of a conversion of the goods of the principal by his agent; and if the agent incurred a liability by so doing, he was necessarily guilty of a fraud. (Bigelow on Fraud, 222; Cooley on Torts, 526; 38 Wis. 119.)

The court below, by its decision upon this motion, has in advance decided the whole case against us. Unless this decision is reversed, it will be practically useless to try the case upon its merits. It therefore seems to us that a court should not be permitted in such a summary way, upon affidavits alone, to usurp the province of a jury, and fully determine a case before even the issues are made up in it. (14 Kas. 484; 33 N. Y. Sup. Ct. 555; 2 Disney, 396; 2 Hilton, 103, 179; 6 Wend. 524; 2 Johns. 100; 8 How. Pr. 213; 49 id. 171; 5 Daly, 505.)

2. The plaintiff, by his evidence, established a *prima facie* case against the defendant of having fraudulently incurred a liability to the plaintiff, which the defendant's evidence entirely failed to rebut. Upon the plaintiff's evidence, there appeared to have been nearly $1,200 worth of his property which the defendant had had, and which he was unable to produce or account for in any manner. It seems to us that

this created a presumption beyond a doubt that the defendant, as plaintiff's agent, had converted to his own use the goods of plaintiff to the above amount. Both the law and the contract between the parties required that the defendant should account from time to time to the plaintiff; that he should at all times be ready when called upon to fully account for all property intrusted to him by plaintiff; and that his failure to do so creates a presumption against him of having converted this property to his own use, and gives plaintiff his right of action. (2 Hilton, 199; 12 How. Pr. 208; 32 Tex. 763; 2 Binney, 325, 331; 7 Johns. 132; Am. Leading Cases, 675, note; Story on Agency, §§ 203, 204.)

This is not a case where a demand was suddenly made upon a party who, from the circumstances, might not be expected to be able in a short period of time to make a full account of a long and complicated business. For eighteen months the plaintiff had been persistently demanding that defendant should account to him, and for the same period of time the latter had kept promising to make a full account. Under all the facts and circumstances of this case, the preponderance of the evidence very clearly shows that plaintiff is out of pocket on his deal with defendant about $1,500, and that defendant must have converted about that much of plaintiff's property to his own use.

3. In any view of the case, the defendant converted to his own use $300 to $400 of the accounts which were for the goods of plaintiff sold upon credit. These accounts belonged to plaintiff without any question. The defendant, if he had had any interest in them by way of commissions, had clearly forfeited such interest by his failure to account to plaintiff for his property, etc. (Story on Agency, § 331; 9 Kas. 320; 75 Ill. 674; 20 Gratt. 672.)

*F. P. Cochran, S. N. Wood,* and *Carswell & Sanders,* for defendant in error:

1. In attachment proceedings, the court always presumes that the plaintiff has a cause of action; and the only ques-

tion which it will inquire into for the purpose of sustaining or discharging the attachment, is, the truth or falsity of the grounds therefor.   Therefore the plaintiff need never, for the purpose of sustaining his attachment, prove that he has a cause of action to be secured thereby; nor need, nor can, the defendant, for the purpose of discharging the attachment, enter into the merits of the case, and prove that the plaintiff has no cause of action against him, and thereby finally dispose of the plaintiff's claim.   But if some facts should incidentally arise upon the motion to be decided, which will necessarily come up on the final hearing, the court may decide such facts upon the motion, not for the purpose of proving that the plaintiff has or has not a cause of action, but for the purpose of proving or disproving some ground alleged in the attachment.   The law makes no distinction between causes of action as to whether the attachment be discharged or not; but in every case in which an attachment may be issued, the court or judge may discharge the attachment upon proof of the falsity of the grounds alleged for it, although the evidence required to disprove such grounds may be sufficient upon the trial of the case upon its merits to prove that the plaintiff has no cause of action.

2.  "A party is entitled to an order of attachment only when certain facts exist, *not when there is probable cause to believe that they exist.*   If they do not exist, the attachment is wrongfully issued, and the party causing it to issue is liable for all damages actually sustained." (14 Kas. 169.)   What facts have been shown which prove that the defendant fraudulently incurred the liability for which this action was brought?   As there is no evidence that defendant ever sold one cent's worth of the plaintiff's goods and received the pay therefor, and failed to remit to the plaintiff the amount to which he was entitled, how can the court assume that defendant ever did so?

True, the petition and the plaintiff's affidavit show that the defendant received a large amount of goods from the plaintiff, which he did not return and for which he did not

remit the money, but the court will bear in mind that the defendant was authorized by the plaintiff to sell goods on credit. True, the defendant, according to the evidence, was to become responsible to the plaintiff for the goods so sold; but this responsibility could not have been fraudulently incurred by the defendant's failure to collect pay for the goods sold on credit, unless he had sold them without authority, or without believing that he ever could collect pay therefor. Under the contract he was to sell on credit to such persons only as in his best judgment could pay, else he could not have sold on credit at all, for no person can positively know who is absolutely good, or who will make prompt payment.

From all the evidence before the court, we submit that there is nothing to show that the defendant has ever concealed anything, or made any false statements, or received a cent of money for which he has not accounted, and that all his books have always been open and free for the inspection of plaintiff, or any other person; at least, not a single witness knows anything to the contrary. And in everything to which he has testified, he has been more or less corroborated by other witnesses.

The opinion of the court was delivered by

HORTON, C. J.: On the 26th day of March, 1880, the plaintiff in error commenced this action in the district court of Chase county, to recover from the defendant in error the sum of $1,200, the value of goods alleged to have been wrongfully and unlawfully converted to his own use by the defendant, while acting as the agent of the plaintiff. At the same time, plaintiff obtained an attachment against the property of the defendant upon an affidavit alleging two grounds:

1st, That the defendant fraudulently incurred the liability for which the action was about to be brought; and,

2d, That the defendant was about to dispose of his property, with intent to hinder, delay and defraud his creditors.

The defendant filed a motion to discharge the attachment, alleging that the grounds stated in the affidavit are untrue.

Upon the hearing of the motion, plaintiff abandoned the charge that defendant was about to dispose of his property, with intent to defraud, etc., and relied then, as he does here, solely upon the first ground to sustain the attachment. The court granted the motion, and plaintiff excepted.

Objection is taken that the disposition of the motion was a determination in a summary and collateral way of the main issue in the cause, and therefore that as the court had no right to inquire into the question whether the plaintiff had a good cause of action or not, it should have refused to sustain the motion, or at least have refused a decision thereon until a jury had passed upon the issues in the case. Neither the affidavit for an attachment nor the order of attachment is any part of the pleadings in the action. The attachment is merely auxiliary to the action to secure a fund to be applied in satisfaction of the claim of the plaintiff, provided he shall be able to substantiate and make good such claim. Before the attachment is issued, the existence of some one of the statutory grounds therefor must be shown by affidavit. The code specifically provides that the defendant may, before judgment, upon reasonable notice, move to discharge such attachment. Under such a motion, it has always been the practice to contest the existence of any ground for attachment. Such is the law. Whether the charge be non-residence, or that the defendant has fraudulently incurred the liability, it is open to attack, and may be disproved. While the court cannot inquire into the validity or justice of the cause of action, yet it may inquire into the truthfulness of the grounds of attachment set forth in the affidavit, and if this inquiry incidentally refers to some of the allegations of the petition, this circumstance does not compel the court or judge to refuse consideration of the motion or suspend the decision until the final trial of the cause. A dissolution of the attachment does not defeat the action, and is only the finding or result on a summary hearing upon a special proceeding auxiliary to the action. In this view, the court below had the authority to hear and determine the motion.

The other question in the case is one of fact. All the evidence offered by either party or heard by the court was in writing, in the shape of affidavits, except the depositions of the defendant taken by the plaintiff. The evidence produced by plaintiff covers one hundred and sixty pages of manuscript; that for the defendant, forty pages. We have not space to reproduce the affidavits here, or even abstracts of them. It is sufficient for all purposes to say they disclose that, in December, 1877, the plaintiff and defendant entered into an oral agreement in substance as follows: The plaintiff was to ship from his store in Emporia to the defendant at Cottonwood Falls, from time to time as needed, such goods as are usually kept in a retail harness store. The defendant was to receive such goods and sell the same in his own name for the plaintiff at Cottonwood Falls, upon a commission of seven per cent. upon the gross amount of all sales of harness, and ten per cent. upon the gross amount of sales of all other goods. The defendant was, at the end of each month, to render an account of the business and remit the proceeds of all sales. The sales were to be for cash. By subsequent modifications of the agreement by letters written by each party, the defendant was to remit as fast as he should receive from sales a sufficient amount of money to pay for remitting the same; and he was allowed to sell upon short time to parties who were responsible and whose accounts he would guarantee; and he was also permitted, when necessary to make a sale, to cut the prices a little at which the goods were billed by plaintiff to him. Otherwise, he was to sell the goods for the prices at which they were billed to him. Under this agreement, from December 12, 1877, to November 6, 1879, the plaintiff delivered to the defendant goods which at the billed prices amounted in value to the sum of $3,931.05. On March 17, 1880, the account of the plaintiff with defendant showed goods charged to him to the amount of $3,931.05, with credits by remittances and goods returned of $1,600, leaving a balance of $2,331.05. On March 17, 1880, plaintiff and defendant had a partial settlement, and plaintiff took

back goods on hand $274.63; credited defendant for freight, expressage and cost of remitting money, $40, with $16.75 for taxes, and $393.10 for discounts, and also $117.58 for balance of commissions. Defendant, among other things, turned over to plaintiff a horse at the agreed price of $90, and $48.35 of groceries, making total credits given to defendant of $2,772.58, still leaving a balance of $1,158.47. The defendant carried on a small grocery business in connection with his sale of harness, etc. The average amount of the stock in the grocery was from $400 to $500. As to the amount of goods which had been sold on credit but not collected, defendant produced for the examination of the plaintiff and one Thomas G. Stack, who was acting in the settlement with defendant, a ledger in which were the outstanding accounts due from various persons for the goods of plaintiff, and also for the groceries sold on credit. According to the evidence of Stack, these accounts were against eighty-three persons, and aggregated the total sum of $1,278.81. This witness estimated, from the statements of defendant and from matters in the ledger, that not to exceed twenty-five per cent. of the accounts were due for goods of plaintiff. Under this estimate, about $1,000 of goods would be unaccounted for. This particular evidence of Stack is overturned by the testimony of Lester Cochran, S. D. Breese and W. P. Smith, that Stack omitted from the list of names on the ledger eighty-three other names shown by the ledger as debtors. Counsel of plaintiff suggest that the persons whose names were omitted had no accounts on the books for goods of plaintiff. The witness Stack intended by his testimony to convey the inference that the names of the persons he gave were all the parties the defendant had charges against, either for harness or for groceries. *Suppressio veri* is as bad as *suggestio falsi.*

From these and other facts in the case, it is apparent to our minds that the goods not otherwise accounted for had been sold on credit and the accounts therefor had not been collected; that as defendant was authorized to sell to such persons as in his judgment were good, and nothing having

been proved that he did not exercise his best judgment, such sales were fully within the scope of his authority. At least, the sales were not fraudulent or unlawful. As such defendant became possessed of the goods and merchandise without any deception, trick, or other unfair means, and as we are not satisfied from the record that he converted to his own use any of the property with which he was intrusted, or any of the proceeds thereof, we are not willing to say that the defendant "fraudulently incurred the liability for which the suit was brought." We do not think the testimony supports such a conclusion.

There are many explanatory and qualifying circumstances connected with the conduct of defendant. It is true that after December, 1877, he failed to render any account, although continually requested so to do, and often promising that he would. It is also true that the excuse for his neglect to obtain one of his account books which was missing, but supposed to have been in the possession of his deceased wife's parents, as also his statements of his accounts, are not wholly satisfactory. Yet it seems to us all the trouble in his affairs grew out of his incompetence and unfitness for the business in which he was engaged, and his unwillingness or hesitancy to confess his incapacity. The long list of credits tends to prove his incapacity, but not dishonesty. Prior to his undertaking to sell goods for plaintiff he had been a farmer all his life, and knew nothing about the principles of book-keeping or the selling of goods. He seems to have kept his books to the best of his knowledge, but not according to any known system of book-keeping. The business of his harness and grocery stores has become confused in his accounts, not, we think, fraudulently, but from his want of knowledge of such matters and his awkward system of accounts. We think it impossible to say that only twenty-five per cent. of the uncollected accounts was for the goods of plaintiff. It is more reasonable to believe that in view of the small stock of groceries he usually kept on hand, and the stock he had on March 17, 1880, that the sales on credit were mainly of the

goods of plaintiff. As to the alleged refusal of defendant to surrender up the accounts, the evidence of William Craft makes a complete answer. He testified that after the attempted settlement in March, 1880, between the parties, he saw them part. Defendant then said to plaintiff: "I will collect that money and send it to you just as fast as I can;" and plaintiff in reply said, "That will be all right."

While the conclusion we have reached overthrows the attachment, it does not follow by any means that plaintiff has not a good cause of action against defendant. We simply decide that it does not sufficiently appear from the testimony that he fraudulently incurred the liability existing against him. This, and nothing more.

The order and judgment of the court dissolving and setting aside the attachment will be affirmed.

All the Justices concurring.