NEWELL ET AL., APPELLANTS, *v.* WHITWELL ET AL.,
RESPONDENTS.

[Submitted May 15, 1895. Decided June 3, 1895.]

ATTACHMENT—*Motion to dissolve—Grounds for dissolution.*—Plaintiffs attached the defendants on an account for goods sold on thirty and sixty days' credit and on an account for goods sold under a conditional credit agreement, printed and written on the bills, that the same should become due if any suit was brought against the purchaser. On motion to dissolve the attachment the defendants filed an affidavit to the effect that plaintiffs had agreed to extend a credit of five thousand dollars, and that, in consideration of the payment of eight per cent. interest on all bills not paid at the end of thirty and sixty days, only sums in excess of five thousand dollars should become due so long as defendants continued to trade with the plaintiffs; that the credit agreement on the bills was not called to the attention of defendants, nor made a part of their dealings at the time the goods were purchased, and that none of the debts were due or payable. A letter from the plaintiffs to the defendants, stating that they would accommodate them with a credit of five thousand dollars, charging eight per cent. interest on overdue accounts and asking for a property statement if the offer was satisfactory, and also invoices in which the credit condition did not appear, were attached to the affidavit as exhibits. Affidavits were filed by the plaintiffs denying defendants' version of the five thousand dollar credit arrangement and setting forth that as a condition of extending the proposed credit, defendants were required to furnish a property statement which was not done; that while selling goods to the defendants they delivered thirty-seven invoices, upon nearly all of which was distinctly printed the conditional credit agreement; that at no time were the defendants indebted to the plaintiffs to the extent of five thousand dollars; that all the invoices of the goods sued for contained the conditional credit agreement, and that the sum total of the amount due upon goods sold under the conditional credit agreement exceeded the sum total of the amount sued for. Letters were made part of plaintiffs' affidavit, in which defendants made remittances long before their credit approximated five thousand dollars, promised to clear their accounts up, and asked plaintiffs not to crowd them. The court required plaintiffs to elect whether they would amend their affidavit so as to exclude the amount of invoices upon which the credit agreement did not appear or submit to a dissolution of the attachment. *Held,* that an order dissolving the attachment upon plaintiffs declining to amend was error.

SAME—*Same—Review on appeal.*—Upon the hearing of a motion to dissolve an attachment, where the court heard no testimony other than the affidavits of the parties, the case on appeal must be decided by the appellate court precisely upon what was before the court below, that is, upon record evidence and nothing else.

SAME—*Appeal—Conflict of evidence.*—Upon disputed questions of fact, where there is a substantial conflict between the statements made by those who seek to dissolve an attachment and those who try to retain the lien thereof, this court will not disturb the decision of the court below, unless it is clearly against the preponderance of evidence. (*Landsman* v. *Thompson,* 9 Mont. 18, cited.)

SAME—*Amendment of proceedings.*—The procuring of an attachment is a proceeding within section 116 of the Code of Civil Procedure, and, if such proceeding is defective, it may be amended in the furtherance of justice. (*Pierce* v. *Miles,* 5 Mont. 550; *Magee* v. *Fogarty,* 6 Mont. 237; *Josephi* v. *Mady Clothing Co.,* 13 Mont. 195, cited.) And the new Code of Civil Procedure of 1895, section 568, expressly provides for amendments to the affidavit in attachment.

SAME—*Amendment in case of mistake as to amount of indebtedness.*—Where one, in good faith has made a mistake in the amount of the indebtedness, to secure which an attachment was issued, it is within the power of the court to permit an amendment to

be made, and judgment to be entered in the proper sum, so that the plaintiff should not lose his whole lien because of an inadvertent error.

SAME—*Sufficiency of affidavit.*—Where part of the debt sued for is on an express and part on an implied contract an affidavit simply stating the affiants' conclusion, namely, that the defendants are indebted to the plaintiffs in a specified sum, upon an express and implied contract for the payment of money, which is now due and payable, is a sufficient compliance with the requirement of section 181 of the Code of Civil Procedure, that the affidavit in attachment must show that the debt sued is upon contract.

SAME—*Duty of clerk in issuing writ.*—Under our statute (sections 181, 182, of the Code of Civil Procedure, Compiled Statutes) requiring the clerk to issue the writ of attachment when the affidavit required by law has been filed and the necessary undertaking has been given, it was not contemplated that the clerk should exercise more than a ministerial duty in issuing the writ.

SAME—*Trial of merits on motion to dissolve.*—Under sections 200-202, of the Code of Civil Procedure, providing that a motion to discharge an attachment on the ground that the writ was improperly issued, may be made upon affidavits, and the plaintiff may oppose these affidavits by counter affidavits, or other evidence, in addition to those on which the order of attachment was made, an attachment may be dissolved for irregularities or imperfections in its issuance, not only apparent upon the face of the papers, but upon other grounds, wherein it is made to appear that the issuance of the writ was improper, but it is not within the scope of the inquiry under a motion to dissolve, to try the merits of the main action.

*Appeal from Tenth Judicial District, Flathead County.*

ACTION to recover for goods sold. Defendants' motion to dissolve the attachment was granted by DuBOSE, J. Reversed.

Statement of the case by the justice delivering the opinion.

Suit in attachment. On July 28, 1893, the appellants, merchants in Minneapolis, Minn., instituted suit against respondents, merchants at Kalispell, Mont., to recover $4,016.40, due for goods sold and delivered, and for the sum of $950.55, to become due on September 11, 1893. Affidavit in attachment was made by plaintiffs' agent, in which it was alleged that defendants were about to dispose of their property for the purpose of defrauding their creditors. August 5, 1893, defendants moved to discharge the writ of attachment, on the grounds, substantially, that the affidavit failed to show that the sum charged for the goods was a reasonable, agreed, or any value thereof; that when the suit was commenced the debt upon which it was instituted was not due; that the goods purchased by defendants, and for which the suit was brought,

were purchased upon time, as agreed upon by the parties, which time had not expired when the suit was instituted; and that the affidavit of plaintiffs was false and untrue. Other grounds were included in the motion, which it is not necessary to recite.

To support that motion certain affidavits were filed by the defendants, denying any disposition of their property, other than in the usual course of business, and denying any fraud on their part, or any intended fraud.

Upon August 19th plaintiffs filed an amended complaint, by leave of court, setting forth that between September 21, 1892, and June 5, 1893, defendants became indebted to plaintiffs for goods sold at the defendants' instance and request, between said dates, in the sum of $4,016.40; that all of said goods were sold and delivered by plaintiffs to defendants on a credit of 30 and 60 days, and that all goods sold after April 10, 1893, were sold on 30 days' credit. Plaintiffs further allege that between May 29 and June 11, 1893, defendants became indebted to them in the sum of $950.55 upon open account for goods sold between said dates; that on terms of conditional credit the said sum of $950.55 became due on September 11th, if the conditions under which the goods were sold did not transpire. The credit contract was as follows: "A conditional credit, as stipulated on the face of this invoice, will be allowed on this bill, provided that, should any suit or action at law be brought against, or any lien be given by, the purchaser named in said invoice, or if he shall assign, sell out, change, or retire from business, this bill shall at once become due and payable." Plaintiffs allege that after the sale of the goods certain actions at law were commenced by various parties against defendants; that all these actions were brought before plaintiffs sued, by reason of which fact the said sum of $950.55 became immediately due and payable. An amended affidavit in attachment was filed, in which E. S. Johnson, as duly authorized agent of plaintiffs, swore to the total indebtedness of defendants to plaintiffs in the sum of $4,966.95, upon an express and implied contract for the payment of money.

Upon August 19th, the defendants, in support of their motion to dissolve, filed their affidavits, substantially as follows : Defendants and plaintiffs agreed that plaintiffs would extend the defendants a line of credit to the amount of $5,000, and that no amounts owing to plaintiffs, excepting sums exceeding $5,000, should be due and payable; and as long as defendants continued to purchase goods from plaintiffs the $5,000 was not to be due and collectable, and, when they ceased to do business with plaintiffs, then the whole indebtedness was to be due and payable; and defendants, in consideration of that agreement, were to pay on all bills which were not paid at the end of 30 and 60 days from the date of the purchase, according to the class of goods purchased, 8 per cent. per annum thereon.

As an exhibit to their affidavit, defendants filed and attached a letter of plaintiffs to defendants, dated Feb. 4, 1893. The tenor of this letter to defendants is that plaintiffs, being informed by their agent that defendants desired to trade with them, and would require a credit of about $5,000, plaintiffs would be glad to accommodate them, and receive their business, charging defendants interest on their overdue accounts at the rate of 8 per cent. per annum. The letter continued: "If this is satisfactory to you, we shall be pleased to have a property statement from you for reference. * * * We inclose herewith a blank for this purpose, which we trust you will feel disposed to fill out and return to us." The affidavit of the defendants further stated that at the time of purchasing the goods no conditions on the back of the invoices or bills, or any other conditions thereon, were made part of the dealings between the parties, and that no contract, other than the one hereinbefore stated, was made between the parties; and that when this suit was instituted, and the attachment issued, none of the debts upon which it was brought were due and payable; that the affidavits of plaintiffs stating the bills and invoices of goods sold and delivered to defendants by plaintiffs, and the conditions that the debt was to become due and payable upon the institution of any other suit, or issuance of attachment, are not true, but false. Affiants attached certain bills and invoices

delivered to defendants by plaintiffs, in which the credit condition did not appear; and affiants state that their attention was never called to any condition on the bills for the purchase of goods, or any other paper by which the debts sued for were to become due at any other time than as heretofore stated, and that the credit condition was not part of the negotiations between plaintiffs and defendants.

The invoices attached to defendants' affidavits were for various articles of merchandise, and are summarized as follows : May 29, 1893, terms 60 days, $376.44; July 11, 1893, terms 60 days, $262.61; April 22, 1893, terms 30 days, $335.79; April 29, 1893, terms 30 days, $407.91; April 29, 1893, terms 30 days, $172.20; May 29, 1893, terms 30 days, $22.95.

George R. Newell and Thomas P. Jumper, in behalf of plaintiffs, filed affidavits, denying specifically that such an arrangement in relation to the $5,000 credit, as sworn to by defendants, was ever contemplated or entered into, and denied that in the letter hereinbefore set forth such an arrangement ever was referred to or contemplated; and set forth that as a condition of extending to defendants the credit proposed and contemplated by said letter, defendants were required and expected to furnish the plaintiffs a property statement, but that defendants never furnished the plaintiffs any statement whatsoever; that there were continual dealings between the parties from September, 1892, to July 11, 1893; that some of the goods sold were for cash, without credit, but mostly on credit of 30 and 60 days, and that never were the defendants indebted to plaintiffs in the sum of $5,000, and that they continued to pay to plaintiffs money on their account, and made several payments of $500 each in May and June, 1893, and that at the time of the commencement of the suit there was owing and due at least $4,016.40 for goods sold and delivered prior to May 31, 1893; that the parties corresponded with one another, and that such correspondence in its purport is inconsistent with the agreement claimed by the defendants. The affiants re-aver the conditional credit agreement, and set forth that while the

plaintiffs were selling goods to the defendants they sent and delivered 37 invoices, under various dates, in all, or nearly all, of which the conditional credit agreement was written and printed.

Attached to the plaintiffs' affidavit are letters by plaintiffs to defendants asking for moneys on account, and urging prompt remittances on account of hard times. One letter, dated May 5, 1893, states the amount of defendants' indebtedness to be $1,265, plaintiffs asking for $800 or $1,000. Another letter, of June 5, 1893, states their indebtedness to be $3,174.90; it asks for $1,000. Another letter, dated July 6, 1893, informs defendants that plaintiffs have drawn for $500. The letters of defendants to plaintiffs, also made part of plaintiffs' affidavit, ask for statements of account, and promise to send more money. One letter in particular, dated June 16, 1893, tells plaintiffs that they remitted plaintiffs $500 the day before, and will remit again in a few days, and asks plaintiffs not ''to crowd defendants in the matter, and they will do all they can for them.''

E. S. Johnson, agent of the plaintiffs, swore by affidavit that he was familiar with the terms of credit given by plaintiffs to merchants in Montana; that he had examined all the bills and invoices of goods sold by plaintiffs to defendants, for which this suit was brought, and that there was but one item in all of said bills which was a credit of four months,—that was an item of $60.43, dated September 21, 1892; that all of said goods sued for in this action were sold on conditional credit of 60 and 30 days, except $950.55, where the conditional credit applied. He further states that on July 1st he was in Kalispell, and knew that suits and attachments had been instituted against defendants, and upon this information he acted by procuring counsel for plaintiffs. Affiant further denies any agreement between plaintiffs and defendants that the accounts were not due.

J. G. McLean, also an agent of plaintiffs, filed an affidavit denying the agreements as set forth by defendants' affidavits, and stating ''that the longest time mentioned, even as a con-

ditional credit, had expired on the whole sum of $4,966.95 at the time this suit was instituted; but affiant alleges that it was in all bills and invoices of goods sold by plaintiffs to the defendants, for the recovery of which value this action is brought, made a condition, and distinctly printed upon said bills as a part of the contract of sale, that the credit mentioned in said invoice and bills was a conditional credit, which condition was as follows.''      The conditional credit is then set forth fully.    Affiant further states that before this suit was instituted other suits and attachments were issued for large sums of money.

Upon August 29th defendant Whitwell filed a counter affidavit, stating that he bought all the goods for his firm, and that he never assented to the credit memorandum, and that all the statements in relation thereto were false.    He then proceeds as follows :    '' Affiant further says that at the time the said plaintiffs commenced their said action against these defendants, these defendants had not given any lien on any of their property, nor made any assignment, or sold out, or changed or retired from business, but that they were conducting their said business in the usual way; affiant further says that he is informed and believes that no action at law had been commenced against these defendants at the time these plaintiffs commenced their said suit, but that these plaintiffs, acting together with other creditors of the defendants,—Griggs, Cooper & Co., C. Gotzian & Co., W. S. Conrad & Co. and C. R. Groff,—secretly agreed together to commence their said actions in the order in which the same were commenced, and share pro rata in the collections of their said claims, all of the said creditors well knowing that their said claims were in a large part not due.    Affiant says, and has reason to believe, that all of said suits were prepared by the same attorneys, at the same time. Affiant further says that at the time the writ of attachment was served on these defendants the attachments for the other above-named plaintiffs were served, and that they were all served at the same time and simultaneously; and further affiant sayeth not.''

Newell & Jumper, for plaintiffs, filed another affidavit, in which they stated that said accounts sued on, $4,016.40, were due by virtue of the expiration of the time credits, and that $950.55 became due by virtue of suits against the defendants commenced before this action was.

Upon the hearing on the motion to dissolve, the following proceeding was had : "After argument by counsel, and it being admitted in open court by the plaintiffs' counsel that the sum of $666.84 was due only by virtue of the fact that there was a certain clause placed upon the invoices of goods shipped from the plaintiffs to the defendants by virtue of which the debt would become due, provided the defendants were attached at any time, it was further admitted by plaintiffs' counsel that the invoices of goods amounting to $666.84 did not have this condition upon them, whereupon the court informed plaintiffs' counsel that he would decide as to that amount the debt was not due, and would dissolve their attachment, unless they amended their affidavit in conformity with the amount that there was actually due. Plaintiffs' counsel contended that there were thirty-seven invoices of goods from plaintiffs to defendants in which the condition for the maturity of the entire debt does appear, and that, even though there were three or four invoices, amounting to $666.84, on which this condition was absent, yet there were enough invoices in which the condition did appear to work the maturity of the entire debt, and therefore refused to amend. Plaintiffs' counsel further contended that the debt was an entire debt, the court finding that it was not. Plaintiffs' counsel refused the offer to amend, and thereupon the court ordered, adjudged, and decreed that the said attachment be dissolved."

From the order dissolving the attachment, plaintiffs appeal.

*McIntire & Clinton* and *Strevell & Porter*, for Appellants.

Under sections 181 and 200 of the First Division of the Compiled Statutes it is not necessary that a plaintiff prove every dollar for which his action is brought, or failing to do that,

have his entire attachment discharged. The law is the exact reverse of such a proposition. The statute is, that the attachment "shall stand as security for any judgment which may be recovered in the action." The statute does not require that the plaintiff should state the amount of his indebtedness. (Drake on Attachment, § 418.) "A statement in the affidavit of a greater amount than is actually due does not vitiate the attachment." (*Lathrop* v. *Snyder*, 16 Wis. 293; *Tessier* v. *Lockwood*, 24 N. W. 754.) In the following cases where the action was brought for a greater amount than was actually due, this fact was held to be no ground to dissolve the attachment or to deprive it of its priority over second attachments for the amount which was actually due. (Wade on Attachment, § 219, page 410; *Medes* v. *Frietess*, 16 Nev. 388; *Felton* v. *Wardworth*, 7 Cush. 587; *Miller* v. *Clark*, 8 Pick. 412; *Cox* v. *Dawson*, 26 Pac. R. 973.) Where the statute required the affiant to state "that the amount of debt or sum demanded was actually due, it was held not to mean that the precise amount stated was actually due but that the day of payment had actually arrived." (*Zinn* v. *Dzialynzski*, 13 Fla. 597.) "Where the law required the plaintiff to state the amount due, and that no part of the same had been paid, and that he was not indebted to the defendant, it was held sufficient for the plaintiff to state the actual sum due, and that he was indebted to the defendant in a small sum, the amount of which he did not know." (*Tarner* v. *McDaniel*, 1 McCord, 552; *Holston Manufacturing Co.* v. *Lea.* 18 Ga. 647; *Ruthe* v. *Green Bay & M. R. R. Co.*, 37 Wis. 344.) See, also, *Kahn* v. *Kahn*, 44 Ark. 404; 1 Am. & Eng. Ency. of Law, 903 and note; *Wells* v. *Morring*, 63 Tex. 340. "Where the affidavit must state simply the existence of a particular fact as a ground of attachment, nothing is requested but a substantial conformity to the language of the statute." (*Wheeler* v. *Farmer*, 38 Cal. 203; *Reyburn* v. *Backett*, 2 Kan. 277; *Crawford* v. *Roberts*, 8 Or. 324; *Dunly* v. *Schwartz*, 17 Ohio St. 640; *Garver* v. *White*, 23 Id 192.) The question of whether the debt is due is a question of fact to be determined as other facts in a trial

upon the merits, when that question is raised. (Waples Attachment and Garnishment, page 426.)   Drake on Attachment, § 418, says : "On a motion to vacate an attachment for irregularity and improvidence, it is error to vacate it upon a ground which involves the merits of the case." (*Baum* v. *Bell*, 28 S. C. 201.) "While the merits cannot be questioned on a motion to dissolve an attachment, the defendant may explain any pertinent fact out of which the suit arose, although he also shows that the sum claimed is too large." (*Hamilton* v. *Johnson* (Nebraska) 49 N. W. 703.) "A motion to vacate an attachment on the ground that no such debt is due, as is claimed in the complaint, will not be granted, as that question can only be disposed of upon the trial." (*Sterns Paper Co.* v. *Johnson*, 44 N. Y. S. R. 916, 18 N. Y. Supp. 490.) An attachment being in aid, the defense to it, and the principle action are to be made concurrently. (*Leopold* v. *Steel*, 41 Ill. App. 17.)

*P. J. McLaughlin* and *H. G. McIntire*, for Respondents.

The affidavits are radically conflicting in their terms. The judge found the issue in favor of the defendants, and upon well settled principles such finding should not be disturbed. (*Meyer* v. *Zingre*, 25 N. W. Rep. 727; *Champion Machine Co.* v. *Updyke*, 29 Pac. Rep. 573.) The application to dissolve the attachment is based upon the ground that it was improperly issued. To entitle a plaintiff to an attachment in Montana he must file an affidavit "showing that the defendant is indebted to the plaintiff upon a contract expressed or implied for the payment of money   *   *   *   *   *   then due, which is not secured by a mortgage, lien or pledge upon real or personal property"   *   *   *   (Comp. Stat. p. 104 sec. 181.) The statute, section 200, further provides that defendant may move to discharge an attachment because it was improperly issued; and that such motion may be made upon affidavits, section 201. An attachment is improperly issued when it is based upon a false affidavit or when the statu-

tory grounds for its issuance do not exist.    (Drake on Attachments (6th Ed.) §§ 397, 399.)    The existence of the statutory grounds authorizing an attachment is a jurisdictional prerequisite, and consequently when the absence of any of those grounds is shown in the way provided by law the attachment falls as a matter of course.    An attachment issued upon a false or fatally defective affidavit stands in the same position as an attachment issued without any affidavit.    (*Murphy* v. *Montandon*, 29 Pac. Rep. 851.  Drake on Attachment, §§ 86, 87.)    It is a well settled principle of the law relating to attachments that when the affidavit recites that the entire indebtedness set out is past due, and it is shown on a motion to dissolve, that a part of it is not due the attachment must fall.  (*Meyer* v. *Zinger*, 25 N. W. Rep. 727; *Meyer* v. *Evans*, 43 N. W. Rep. 109; *Avery* v. *Zander*, 13 S. W. Rep. 971;  *Cox* v. *Reinhart*, 41 Tex. 591; *Snyder* v. *Totham*, 6 Tex. 190;  *Garvin* v. *Hanson*, 55 Wis. 341.)    Under the right to procure the dissolution of an attachment any and all the grounds upon which the attachment is based can be inquired into.    Such an inquiry does not prevent the parties from still litigating the suit upon its merits, and in such further litigation having the pleasure of a trial by jury, if they desire it.    Section 200 clearly justifies the determination of some fact relating to the issuing of the attachment, and if one can be inquired into, we see no reason why all may not be.    In *Elling* v. *Kirkpatrick*, 6 Mont. 119, the falsity of an averment that the debt sued on was not secured was held sufficient to dissolve an attachment, and in *Avery* v. *Zander*, 15 S. W. Rep. 971; *Clark* v. *Montford*, 15 Pac. Rep. 899; the fact of the maturity of the debt was inquired into, precisely as in the case at bar, in the latter case appellant's contention in this regard being squarely raised and rejected. ( *Windt* v. *Banniza*, 26 Pac. Rep. 189, and cases cited therein; *Champion Machine Co.* v. *Updyke*, 29 Pac. Rep. 573.  See, also, Drake on Attachment, §§ 397, 399.)  The affidavit in attachment in this case is insufficient.    Under statute, section 181, an attachment affidavit must *show* the existence of certain facts, among others that the debt sued is upon contract.    This

affidavit does not fulfill this requirement. It merely states the affiant's conclusion that defendants are indebted to plaintiffs without reciting the character of the debt or the facts upon which it arose. Such an affidavit as this one has been held insufficient, and the attachment based on it dissolved in *People ex rel Tracy* v. *Blanchard*, 28 N. W. Rep. 669; Drake on Attachments, § 95; and See *Hershfield* v. *Aiken*, 3 Mont. 422; *Smith* v. *Davis*, 29 Hun. 306; *Wilmerding* v. *Cunningham*, 65 How. 344. The test of the sufficiency of an affidavit in attacament is whether its falsity would expose the party making it to a prosecution for perjury. (1 Wade on Attachment, 55.)

Hunt, J.—Upon the hearing on the motion to dissolve the attachment the court heard no testimony other than the affidavits contained in the statement, hereinbefore recapitulated. We may concede that upon disputed questions of fact, where there is a substantial conflict between the statements made by those who seek to dissolve the attachment and those who try to retain such a lien, the court will not disturb the decision of the district judge, unless it is clearly against the preponderance of evidence; yet we are irresistably led to a conclusion in the case before us, directly opposite to that entertained by the district court. It must be remembered that the case is not one where the witnesses testified in person, and where the manner in which they gave their evidence might have materially aided the trial judge in weighing their credibility. For this reason the case must be decided by this court precisely upon what was before the district court; that is, upon record evidence, and nothing else. (*Robinson* v. *Melvin*, 14 Kan. 484; *Landsman* v. *Thompson*, 9 Mont. 182.)

We regard the statement made by the defendants to the effect that plaintiffs were to extend the defendants a credit of $5,000, and that all sums in excess of $5,000 were alone to be collected, so long as defendants continued to do business with plaintiffs, as wholly unreasonable on its face. It is incredible that such an unusual agreement, which was a practical loan of $5,000, never to be repaid if respondents traded with appel-

lants, could have been entered into. But, if our conclusion in relation to this agreement, being of itself improbable, is erroneous, to satisfy us that we are right we have only to refer to the correspondence between plaintiffs and defendants, wherein the defendants, long prior to the time when their credit even approximated the sum of $5,000, were asking leniency at appellants' hands in collections, and making remittances to the plaintiffs, thanking them for past favors, and promising to clear their accounts up. In one letter, quoted in part in the statement of the case, defendants ask plaintiffs not to "crowd them." It naturally suggests itself, why should the defendants ask the plaintiffs not to crowd them when they only owed plaintiffs about $3,000, and under their agreement, as contended for, there could be no indebtedness collected until a maximum credit of $5,000 had been incurred?

The statements of several witnesses for the plaintiffs all go to show that the credits extended were for less than four months, with but one exception; and that the moneys were due for each and every invoice, prior to the institution of this action, except for the amount of those invoices which only became due by virtue of the happening of the contingency provided for in the credit memoranda.

In relation to the goods sold to the defendants for the $950.55 due on such memoranda of credit, we think the weight of testimony is clearly on the side of the plaintiffs.

It appears by the affidavits of Johnson and McLean and others that the terms of credit upon goods sold on invoices, to the amount of $4,016.40, had expired, and that without any credit condition that sum would be due; but that in all the invoices of goods sold by plaintiffs to defendants and sued for in this action, the conditional credit was printed upon the bills, and made part of the contract of sale, and that the sum total of the amount due upon goods sold under the conditional credit agreement exceeded the sum total of the amount sued for.

It further appears that certain goods were sold for cash in in the course of transactions between the parties, and that of

thirty-seven invoices sent by plaintiffs to defendants in the course of the dealings, all but three or four had the credit memoranda appearing upon the face of the invoice. We can but think that the argument of plaintiffs is reasonable and fair, when they say that the only invoices which did not contain the memoranda of credit clause were cash transactions between the parties, and are therefore immaterial in consideiing this motion in the suit. Such a view conforms with the several statements made by plaintiff's witnesses, which statements are not successfully controverted by the defendants. The statement by the defendants that their attention had not been called to the credit clause is entitled to very little or no weight.. We cannot believe that a mercantile firm would be so careless in reading its invoices as to overlook such an unusual and important condition on so many invoices of goods sent them.

There is an attempt on the part of the defendants to deny that the claims apparently not due did not become so by virtue of any suits against defendants; but this portion of the affidavit of defendant Whitwell is evasive, and evidently sham, because he does not contradict what is averred to be shown by the records, namely, that Griggs, Cooper & Co., and others, had instituted suits against his firm before plaintiffs sued. His statement that these plaintiffs and other creditors secretly agreed to commence their actions in the order in which the same were commenced, and share *pro rata* in the collections of their claims, all of said creditors well knowing that their said claims were in a large part not due, is in itself a contradiction of the averment that no suits had been instituted. A careful reading of the aforesaid affidavit of defendant Whitwell, filed August 29, 1893, will demonstrate the falsity of its contents, provided, of course, summons had been served upon the defendants, of whom he was one, in the proceedings to which he himself refers in a part of his affidavit on the motion to dissolve.

The respondents argue that the plaintiffs' counsel in open court admitted that $666.84 of the account sued on was not due, and, although opportunity was offered the plaintiffs to

amend, they refused to do so.   We do not construe the attitude that the plaintiffs assumed, which is exactly set forth in the statement of facts, to be an admission of the fact that $666.84 of the *debt sued for* was not due, inasmuch as counsel expressly restricted their admissions to the statement that that amount was due only by virtue of the credit memoranda clause upon the invoices.   Plaintiffs' counsel did admit that the invoices amounting to $666.84 did not have the credit condition upon them; but further stated that there were 37 invoices in which the condition of credit did appear, and that, notwithstanding the fact that three or four invoices, amounting to $666.84, did not have that condition, yet there were enough invoices upon which it did appear to make the entire debt sued for due.   Under such a contention made by the plaintiffs, and not directly and specifically controverted by any affidavits of the defendants, we think that it was error on the part of the district judge to put the plaintiffs upon an election requiring them to either amend their affidavit in attachment, or submit to a dissolution thereof.

Our conclusion is that, upon all the facts as they appeared before the learned judge of the district court, the affidavits of respondents presented no substantial conflict with the statements of the plaintiffs, and contained many statements so highly improbable as to deny to them claims to belief. (*Landsman* v. *Thompson, supra.*)

Respondents next argue that the affidavit upon which the attachment in this case was issued is fatally defective, upon the ground that part of the claim was not due; but this argument is based upon the hypothesis that the ruling of the court was correct that $666.84 of the amount sued for was not yet due. Our opinion upon the merits renders it unnecessary to discuss the question of whether or not an attachment is void where the affidavit states that a greater sum is due than is subsequently determined to be due.   We think, however, that under the weight of authority, where a person has, in good faith, made a mistake in the amount of the indebtedness, to secure which the attachment was issued, it is within the power

of the court to permit an amendment to be made, and judgment to be entered in the proper sum, and that the plaintiff should not lose his whole lien because of an inadvertent error.

The procuring of an attachment is a proceeding within the spirit of the Code, and, if such proceeding is defective, the same may be amended in the furtherance of justice, like any other proceeding, under section 116. (*Pierse* v. *Mills*, 5 Mont. 550; *Magee* v. *Fogerty*, 6 Mont. 237; *Josephi* v. *Clothing Co.*, 13 Mont. 195; *Peiffer* v. *Wheeler*, 76 Hun. 280, 27 N. Y. Supp. 771; *Insurance Co.* v. *Dimmick* (Sup.) 22 N. Y. Supp. 1096; Maxw. Code Pl. 585; *Struthers* v. *McDowell*, 5 Neb. 491.)

The legislature has not only failed to disapprove of these repeated judicial interpretations of the attachment laws, but has expressly sanctioned them by the adoption of a provision in the new Code of Civil Procedure, passed in 1895, permitting amendments to the affidavit in attachment. (§ 916, Code of Civil Procedure.)

Finally, we are asked to declare the affidavit in attachment in this case wholly insufficient, because, under section 181, Code of Civil Procedure, the affidavit must show the existence of certain facts,—among others, that the debt sued on is upon contract. The amended affidavit filed pursues the usual course of simply stating the affiant's conclusion, namely, that defendants are indebted to plaintiffs in the sum of $4,966.95, with 10 per cent. per annum interest thereon from the 28th day of August, 1893, upon an express and implied contract for the payment of money, which is now due from defendants to plaintiffs. But we think that such an affidavit is sufficient. Under our statutes the clerk must issue the writ of attachment when the affidavit required by law has been filed, and the necessary undertaking has been given. It certainly was not contemplated by the statute that the clerk should exercise more than a ministerial duty in issuing a writ of attachment; and, where the ultimate facts are set forth as fully as they were in this case, the statute has been substantially complied

with. (*Wheeler* v. *Farmer*, 38 Cal. 203; *Bank* v. *Boyd*, 86 Cal. 386; *Gutman* v. *Iron Co.*, 5 W. Va. 22; Drake on Attachment, § 98; 1 Wade on Attachment, pp. 120, 131; *Weaver* v. *Hayward*, 41 Cal. 118; *Crawford* v. *Roberts*, 8 Or. 324.) Under a statute substantially like ours, requiring an affidavit showing the nature of the plaintiff's claim, it has been held reference may be had to the complaint where the statement is not as full in the affidavit as may be desired. (*Hart* v. *Barnes*, 24 Neb. 782, 40 N. W. 322; Drake on Attachment, § 95; Waples on Attachment, page 87.)

We might rest the decision of this case upon the views hereinbefore expressed. An important question of practice, however, was ably presented to the court as the principal one involved, and, in view of the fact that we have given to it a very careful examination, it is proper that we express what seems to us to be the better view of the point raised.

By the affidavits used on the motion to dissolve, the real issue between the parties was whether the debt sued on by the plaintiffs was due wholly or in part. To determine this issue involved a consideration of the entire merits of the controversy between the parties. We are not prepared to believe that such a determination can be had on a motion to dissolve an attachment. By section 200 of the Code of Civil Procedure the only ground upon which an attachment may be discharged is that the writ was improperly issued. If this statute were standing by itself, we doubt whether any inquiry could be had beyond what might be apparent by the records in the case before the court; but the law evidently contemplates a further examination, for, by sections 201 and 202, the motion to discharge an attachment on the ground that the writ was improperly issued may be made upon affidavits, as well as upon the papers themselves; and the plaintiff may oppose these affidavits by counter affidavits, or other evidence, in addition to those on which the order of attachment was made. We therefore think that an attachment can be dissolved for irregularities or imperfections in its issuance, not only apparent upon the writing and the printing contained in the papers, but upon other

grounds, wherein it is made to appear that the issuance of the writ has been improper or irregular.

But how far can the investigation under the motion go, and how restrictive or how liberal are the terms of the statute? If, for instances, the notary taking the oath of the plaintiff to the affidavit was not in fact a notary; if on the same demand a second writ has been issued in the same county; or where the bond was not signed by those purporting to have signed it; or where the party making oath to the affidavit as the agent of the plaintiff was not in fact his agent; or perhaps in other instances, where the writ is founded upon facts not the same ones constituting the cause of action, and where a decision upon such facts is not a decision upon the identical issue to be tried to a jury, and upon which plaintiff's right of action solely depends,—we think that a motion to dissolve the attachment upon the ground that it was improperly issued is contemplated by the statute, and in such instances affidavits may be resorted to to properly place before the court the information necessary for it to have in order to base a finding upon that the writ has been improperly issued, and to make an order of discharge. But we do not think that it is within the terms of the statute, or within the scope of an inquiry into whether there has been an improper issuance of the writ, for the district court to try the merits of the main action in a motion to dissolve the attachment. If it were, the court, by the expression of an opinion upon disputed questions of fact, could, on a motion to dissolve to-day, render a judgment involving the merits of the suit, which the law says a jury alone can do to-morrow, if either party elects to have a jury.

It is urged that an attachment proceeding is but ancillary to the main action, and that a trial upon that issue does not affect the merits of the suit. This is true, but it does not dispose of the anomalous position to which the defendants' reasoning carries us, if the judge may try the facts and destroy the entire value of the plaintiff's judgment by dissolving the attachment, thus declaring it improvidently issued; while a jury, upon precisely the same testimony, and upon the identical issue,

might decide contrary to the judge, and award the plaintiff a verdict for all he asks, upon the ground that the debt is due. Or, to carry the illustration further, after the defendants have had the motion to dissolve sustained because the debt was not due, they might default as to the action, and thus confess it was due. Under such conditions what would plaintiffs position be? By the previous ruling of the judge on the merits his debt was not due, but by the default, or if tried by the jury on the merits, his debt was due. Between this legal game of battle-door and shuttlecock, he would have a judgment good only in form, without any substance wherewith to satisfy it. It may be that cases will arise where it is difficult for the trial court or judge to say whether the facts, when disputed on a motion to dissolve, are the same ones upon which the cause of action depends. But, notwithstanding such occasional perplexities, we believe that our construction of the statutes is the correct one, and that far less injurious consequences will flow from pursuing the rule laid down herein than would from holding that the statutes permit the directly disputed issues of the main suit to be adjudicated by the trial court upon ex parte affidavits, and thus too often destroy the object of the suit itself,—the collection of a debt.

This question has been considered by the supreme court of New York a number of times within the past few years. In *Lowenstein* v. *Salinger*, 17 N. Y. Supp. 70, it was held that the court would not ordinarily, on motion to vacate an attachment, try questions regarding the cause of action which should properly be left to be determined on a trial. This ruling is approved of by the same court in *Brown* v. *Wigton*, 18 N. Y. Supp. 490, where the court refused to dissolve an attachment because the affidavits raised the merits of the controversy.

In *Stearns Paper Co.* v. *Johnson*, 18 N. Y. Supp. 490, it was sought to vacate an attachment on the ground, according to the affidavit of the defendant, that there was no such debt due as was claimed in the complaint. It was held that was a question which could only be disposed of upon the trial, and could not be considered

by the court, as the facts were not undisputed, nor were the legal conclusions certain.

In *Johnson* v. *Harwood D. & T. Co.*, 29 N. Y. Supp. 797, on an appeal from an order denying the motion of appellant, a junior attaching creditor, to vacate the plaintiff's action, the supreme court adhered to the principle laid down in the decisions just cited, and refused to dissolve the attachment on the ground that the court would not, on such an application, pass upon the merits of the action.

The last case which we have been able to discover is that of *Kirby* v *Colwell*, reported in 81 Hun, 385, 30 N. Y. Supp. 880, and decided in October, 1894. A motion was there made to vacate an attachment, solely upon the ground that plaintiff had no cause of action against the defendants, and the affidavits presented in support of the motion denied the contract pleaded, or the rendition of the services, which were the basis of the plaintiff's complaint. The trial judge vacated the attachment, but the supreme court held that when, upon a motion of this character, the only question presented relates to the existence of plaintiff's alleged cause of action, and is one of fact, and not of law, it should be left for determination at the trial, and not be decided upon affidavits.

We believe the New York rule to be the correct one, subject to the qualifications hereinbefore discussed, and generally to the further qualification that, "where the facts are undisputed, and the legal conclusions certain, it would be oppressive to hold an attachment which is clearly without foundation." (*Lowenstein* v. *Salinger, supra.*)

The case of *Elling* v. *Kirkpatrick*, 6 Mont. 119, was clearly within the New York rule. The facts therein upon which the motion to dissolve the attachment was made were written legal instruments. They were such as would lead up to certain legal conclusions, and addressed themselves entirely to the consideration of the court, and not a jury. See, also, *Herrmann* v. *Amedee*, 30 La. Ann. 393, where it was held that the defendant might put in issue, and require to be passed upon, the allegations of the plaintiff's affidavit, on which the writ itself is is-

sued, without reference to the merits; but where the petition shows a cause of action, although the allegations are not true in fact, or the defendant has defenses on which the demand of plaintiff may be be defeated on the merits, neither the truth of the allegations nor the defense on the merits can be inquired into on the rule to show cause. The general doctrine is also recognized in *Carnahan* v. *Gustine* (Okl.) 37 Pac. 594, although in that case the court follow the Kansas cases, and *Rosenberg* v. *Burnstein* (Minn.) 61 N. W. 684; *Miller* v. *Chandler*, 29 La. Ann. 88; *Reiss* v. *Brady*, 2 Cal. 132; Drake on Attachment, § 418. An analogy, too, may be found in a hearing on an order of arrest against a debtor. (*Griswold* v. *Sweet*, 49 How. Prac. 171.)

Several cases cited by the respondents seem to hold that there may be a trial of the merits on the motion to dissolve. The early Kansas cases, *Robinson* v. *Melvin*, 14 Kan. 484 and *Burdrem* v. *Denn*, 25 Kan. 430, upon critical examination, scarcely go as far, we think, as the respondents would have the court go in this case. If they do, we hold that they do not state the law correctly, as applied to our statute. But in considering the Kansas cases it is highly important to note that under paragraph 4323, Gen. St. Kan., a defendant may, at any time before judgment, move to discharge an attachment as to the whole or part of the property attached, without statutory limitations, such as Montana has, to the grounds upon which the motion may be based. The statutes of Nebraska (§ 4745, Consol. St. Neb.) also permit a motion to discharge a writ of attachment on exactly the same grounds as the Kansas statutes, with no express limitations, and yet the supreme court of Nebraska held, in *Olmstead* v. *Rivers* (1879) 9 Neb. 234, 2 N. W. 366, that, where a motion was made to discharge an attachment on the ground that the debt was not due at the commencement of the suit, the truth or falsity of the statement " cannot be inquired into on a motion to dissolve the attachment. That question can be settled only on a trial of the issues under the pleadings." The late Kansas cases proceed upon the doctrine of *stare decisis*.

In Pennsylvania and several other states the statutes confer the power on the court or jury expressly to hear evidence, or determine the truth of the allegations contained in the affidavit upon which the writ is issued, and to dissolve or continue the liens of such attachments, according as he or they shall find the allegations of such affidavit sustained or otherwise. ( *Walls* v. *Campbell* (Pa. Sup.) 17 Atl. 422; *Woods* v. *Tanquary* (Colo. App.) 34 Pac. 737; chapter 6, Code Colo. 1887.) The case of *Avery* v. *Zander*, 77 Tex. 207, 13 S. W. 971, relied on by respondents, held that where the complaint, on its face, showed that certain of the claims were not due, and the affidavit alleged that the defendant was indebted to the plaintiff in the aggregate amount sued for, without specifying what part of the claims were due, and what part were not due, an attachment was properly dissolved. But the court overlooked an important point in the case. After the original suit was instituted, by leave of court the plaintiff filed an amended petition, precisely as was done in the case at bar, describing with greater particularity the claim sued on, and showing what part was due and what part was not due. There is nowhere throughout the opinion any allusion to this amended complaint, and the ruling of the lower court was sustained wholly upon the ground that the original complaint and affidavit showed part of the claim was not due.

To conclude, it may be that our views upon the proper limitations to be put upon an inquiry whether an attachment has or has not been improperly issued will, upon a positive decision of the question be somewhat modified. But we are inclined to think that if such modification ever be had, it will be in restricting the scope of the inquiry upon motion to dissolve before trial, rather than in extending it.

The order of the district court dissolving the attachment is reversed.

*Reversed.*

PEMBERTON, C. J., and DE WITT, J., concur.