No. 84-30

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

MYRON BUFFALO,

        Plaintiff and Appellant,

  -vs-

JERRY THIEL, JIM NIXON, in his
capacity as Constable of Yellowstone
County, and JANET ESCHLER, Justice
of the Peace,

        Defendants and Respondents.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable Robert H. Wilson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        D. Michael Eakin argued, Montana Legal Services,
        Billings, Montana

    For Respondents:

        Radovich Law Firm; George T. Radovich argued
        for Thiel, Billings, Montana
        Harold Hanser County Attorney, Billings, Montana
        David W. Hoefer argued for Nixon & Eschler, Deputy
        County Attorney, Billings, Montana

                        Submitted:  October 9, 1984

                        Decided:  November 15, 1984

Filed:  NOV  1984

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from an order of the District Court of the Thirteenth Judicial District, Yellowstone County, denying appellant's petition for a writ of certiorari to review an order of the justice court. We reverse the District Court order.

On October 11, 1983, John Lucero rented a room at the Townhouse Motel in Billings under the name of John Santana. He and some friends, including appellant Myron Buffalo, had a party in the room. A fight erupted and the room was damaged.

The next day, October 12, 1984, the owner of the hotel, Jerry Thiel, brought an action in the justice court against all persons present in the motel room. The complaint alleged that the defendants were liable for the damage on an implied contract basis. They were also charged criminally in the matter.

At Thiel's request, at the time the complaint was filed, the justice court also issued an ex parte prejudgment attachment of a pickup truck in the possession of Myron Buffalo. The truck was impounded that same day.

On October 12, the record title of the pickup truck was in the name of Mr. Buffalo's wife, Antoinette Martinez. The original complaint of October 12, failed to name her as a defendant, but Thiel subsequently amended it to include her.

A hearing was scheduled for the second day following the pre-judgment attachment. Mr. Buffalo appeared at that hearing to defend against the attachment, but Mr. Theil

moved that the court continue the hearing because Ms. Martinez had not yet been served. The hearing was continued for four days and Ms. Martinez was served. At the hearing, Mr. Buffalo appeared and argued against the prejudgment attachment on two grounds: (1) that it was not properly issued under the statute; and (2) that in any event, the pickup was exempt because it was part of his marital estate, and essential to his employment. The justice court took the matter under advisement. On October 21, Antoinette Martinez conveyed title of the pickup to the plaintiff, Mr. Buffalo.

Five weeks later the justice court ruled that the attachment would continue during the pendency of the action. During all of this time the pickup was in the possession of the Yellowstone County Sheriff's office.

Mr. Buffalo then filed a "Complaint and Petition for Writ of Certiorari" in district court, alleging wrongful attachment, requesting compensatory damages and exemplary damages of $10,000, and asking the district court to review the justice court proceedings. The district court denied Thiel's motion to dismiss the complaint and Buffalo's petition for a writ of certiorari. As to the writ, the court ruled: "It appearing that any ruling by this Court as to whether or not the lower Court acted outside its jurisdiction must be based upon a review of the factual or legal findings and that such review process is beyond the statutory limitation of this Court." From this order, Mr. Buffalo appeals, citing the following issues for review:

(1) Does the District Court have the authority to review a prejudgment attachment issued by a justice court?

(2) What is the scope of review on a writ of

-3-

certiorari?

(3) Was the justice court acting within its jurisdiction?

(4) Was the prejudgment attachment statute applied in an unconstitutional manner?

Certiorari, also called the writ of review, is provided for by section 27-25-102, MCA, stating in pertinent part:

> "A writ of review may be granted by . . . (2) the supreme court or the district court and any judge thereof, when an inferior tribunal board, or officer exercising judicial functions has exceeded the jurisdiction of such tribunal, board or officer and there is no appeal or, in the judgment of the court, any plain, speedy, and adequate remedy."

If the error is lack of, or excess of jurisdiction, then certiorari is the remedy, State ex rel. Jackson v. Kennie (1900), 24 Mont. 45, 60 P. 589. The writ issues from the superior court to the lower court to transmit the record for review. The purpose of the writ is to determine whether the lower court was acting within its jurisdiction, and to control the action of that court to keep it within those bounds. 14 Am.Jur.2d Certiorari section 2.

The writ cannot be used to correct errors within the lower court's jurisdiction, State ex rel. Mercer v. Woods (1945), 116 Mont. 533, 155 P.2d 197, 14 Am.Jur.2d Certiorari section 10. In this sense, the lack of jurisdiction must be distinguished from an erroneous decision made by a court in exercising the jurisdiction it possessed 20 Am.Jur.2d Courts section 90. If a court is acting within its jurisdiction, it has the power to decide erroneously as well as correctly. Johnston v. Marsh (3rd Cir. 1955), 227 F.2d

528. If an erroneous decision is made in such a case, it is not void and only subject to correction on appeal or by a writ of supervisory control, see State ex rel. Cominco Amer. Inc. v. Dist. Ct. (1966), 147 Mont. 412, 412 P.2d 577, State ex re. Nelson v. Dist. Ct. (1938), 107 Mont. 167, 81 P.2d 699. Notwithstanding the general rule, courts sometimes consider defects and errors in the proceedings of the inferior tribunal which are not of a strictly jurisdictional nature. 14 Am.Jur.2d Certiorari section 10. This Court has held that constitutional errors may be reviewed by a writ of certiorari. Rose v. District Court (Mont. 1981), 628 P.2d 662, 38 St.Rep. 830.

Apart from the "constitutional" exception, the subject of inquiry on certiorari was whether the lower court had jurisdiction over the matter. This necessarily includes personal and subject matter jurisdiction. The area of difficulty arises, as in this case, where an inferior court has both subject matter and personal jurisdiction, and is acting under a particular statute conferring jurisdiction to act only in certain circumstances. The inquiry in such a case is to whether all of the conditions precedent to such jurisdiction are present. The presence or absence of such "jurisdictional facts" is determinative of whether the lower court acted with and within its jurisdiction.

In White v. Corbett (1935), 101 Mont. 1, 52 P.2d 156, this Court discussed the effect of conditions precedent to jurisdiction. There, we held that a justice court must have all of the requisite facts before it before jurisdiction would lie. In that case, the justice court had granted an exemption of property from attachment. The

plaintiff-appellant had requested the distict court to review the justice court's action on a writ of certiorari. He alleged the justice court was acting without jurisdiction because the defendant, who had filed for the exemption, had failed to file an affidavit of citizenship along with the petition, as required by the statute. This Court ruled that the affidavit was necessary to the justice court's jurisdiction, and that defect was properly reviewable by certiorari. See also State v. Justice of the Peace Court (1915) 51 Mont. 133, 149 P. 709; In re Banschbach (1958), 133 Mont. 312, 323 P.2d 1112.

The United States Supreme Court has discussed the nature of the type of facts necessary to establish jurisdiction. In Noble v. Union River Logging Railroad Co. (1893), 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123, the Court stated:

> "There is, however, another class of facts which are termed quasi jurisdictional, which are necessary to be alleged and proved in order to set the machinery of the law in motion, but which, when properly alleged and established to the satisfaction of the court, cannot be attacked collaterally. With respect to these facts, the finding of the court is as conclusively presumed to be correct as its finding with respect to any other matter in issue between the parties. Examples of these are the allegations and proof of the requisite diversity of citizenship, or the amount in controversy in a Federal court, which, when found by such court, cannot be questioned collaterally; . . . the existence and amount of the debt of a petitioning debtor in an involuntary bankruptcy; . . . the fact that there is insufficient personal property to pay the debts of a decedent, when application is made to sell his real estate; . . . the fact that one of the heirs of an estate had reached his majority, when the act provided that the estate should not be sold if all the heirs were minors; . . .

and others of a kindred nature, where the want of jurisdiction does not go to the subject-matter or the parties, but to a preliminary fact necessary to be proven to authorize the court to act . . . In this class of cases, if the allegation be properly made, and the jurisdiction be found by the court, such finding is conclusive and binding in every collateral proceeding. And even if the court be imposed upon, by false testimony, its finding can only be impeached in a proceeding instituted directly for that purpose. (Citations omitted.) 147 U.S. at 173-174, 13 S.Ct. at 273-274, 37 L.Ed. at 126-127.

The justice court's authority to issue a writ of attachment is one of those situations where there are conditions precedent to the court's power. Section 27-18-1501, MCA states:

"Justice's authority to issue writ. A writ to attach the property of the defendant may be issued by the justice at the time of or after issuing summons and before answer, on receiving an affidavit by or on behalf of the plaintiff, showing the same facts as are required to be shown by the affidavit specified in 27-18-202."

Section 27-18-202 states in part:

"Plaintiff's affidavit. When attachment of a defendant's property is sought, an affidavit must be made by the plaintiff or someone in his behalf stating:

"(1) facts which show the defendant is indebted to the plaintiff in the manner specified in 27-18-101(1). . . "

The facts required in section 27-18-101(1) must show that:

"Cases in which property may be attached. (1) Property may be attached in:

"(a) an action upon a contract, express or implied, for the direct payment of money . . . "

If the necessary jurisdictional facts are present, the

-7-

lower court has jurisdiction over the matter and may issue the writ if the defendant fails to show that his property is exempted, see section 25-13-612(1)(b), MCA.

The general rule is that the inquiry of the reviewing court is limited to "the sufficiency of the evidence to support the findings" Annot; <u>Existence of Jurisdictional Facts found By Inferior Tribunal as Subject of Inquiry on Certiorari</u> 5 ALR2d 675, at 679. Montana has adopted a similar view:

> "Accordingly this court said, . . . 'The writ cannot be used to correct errors committed in the exercise of jurisdiction. * * * If the charges are unsupported by the evidence, or the findings are contrary to all the substantial evidence, or where the decision below has no evidence to support it, the question then becomes one of law, and the evidence may be reviewed to determine if such is the fact, but the court cannot review the evidence to determine the preponderance thereof' * * * [I]t is limited in its inquiry to the question whether the application is properly made, and if so, whether the district court or judge exceeded its or his jurisdition." (Citations omitted.) State ex rel Mercer v. Woods (1945), 116 Mont. 533, 155 P.2d 197.

The issue then becomes; was there a preponderance of evidence that a "contract for the direct payment of money" was involved to support the attachment? All of the other elements appear to be present, but, from a review of the record, the alleged contract at issue was clearly not one for the direct payment of money, and thus the district court's denial of certiorari was in error.

Respondent argues that the affidavit supporting the request for the attachment averred an "indebtedness," and that this was sufficient. This argument is wrong; the statute is explicit that the contract on which the

indebtedness is based must be for the direct payment of money. Additionally, simple averment of a "contract for the direct payment of money" in the affidavit accompanying the application for a writ of attachment is insufficient. There must be other evidence supporting this allegation, and it must be apparent that the contact at issue in the underlying action is of this type. This question of law determines the jurisdiction of the justice court.

The nature of this determination is illustrated by examining the older, and constitutionally inadequate, attachment scheme. Newell v. Witwell (1900), 16 Mont. 243, 40 P. 866, arose under the old attachment system where the issuance of the writ was a simple ministerial act. The party requesting the writ was required to comply strictly with the necessary averment requirements. Once those were complied with, the clerk had no choice but to issue the writ. Newell, 16 Mont. at 258, 40 P. at 871. That system was subject to much abuse and as result this power was put in the hands of a judge or a justice of the peace, who, presumably, had the expertise to make the legal determination required. See, sec. 6 Ch. 299 L. 1977; section 27-18-1501, MCA and Mitchell v. W. T. Grant Co. (1974), 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406. Thus, if the justice court erred in its legal conclusion as to the existence of jurisdictional facts, this error is subject to review on certiorari.

The complaint filed by Thiel in the justice court alleged:

I.
"That he is the owner and operator of the Townhouse Motel in Billings, Montana.

-9-

## II.

"That he did, on or about the 11th day of October, 1983, rent a room to the Defendants who used the name 'John Santana.'

" . . .

## IV.

"That, as an implied term of said renting, the Defendants were obligated to maintain the room in the same condition it was in, reasonable wear and tear and acts of God alone accepted.

## V.

"That despite the implied contract described herein, the Defendants did damage the premises in the amount of ONE THOUSAND FIVE HUNDRED ELEVEN DOLLARS AND FIFTY CENTS ($1,511.50); that, additionally the repair of the room will necessitate its remaining vacant for seven days, and thus deprive the Plaintiff of TWO HUNDRED AND EIGHTY DOLLARS ($280.00) in rent."

Without addressing the correctness of Thiel's argument that the room contract gave rise to an "implied contract" not to damage the room, we fail to see how it qualifies as one for the direct payment of money. To be such a contract, the obligation must be an "unconditional and absolute obligation to pay money . . . and not . . . dependent or contingent upon some other agreement." General Finance Co. v. Powell et. al. (1941), 112 Mont. 535, 118 P.2d 751. At the time of the request for the writ of attachment, Mr. Buffalo's obligation had not been reduced to a judgment, and thus was not unconditional and absolute. It was not absolutely clear that he was liable, and in any event, the damages alleged by Mr. Thiel may have been far in excess of any actual damage. These facts were still subject to dispute. And, assuming that there was an implied contract between Mr. Buffalo and Mr. Thiel, the obligation on which the attachment was based was for damage to the

-10-

room, and dependent on the room contract.   See also Gibson
v. Gibson (1960), 137 Mont. 528, 353 P.2d 344   The justice
court erred in issuing the attachment.   It did not have
before it a case resting on a contract for the direct
payment of money, and thus was acting without jurisdiction.
It is this type of jurisdictional fact that is properly
reviewable on certiorari.   The District Court should have
granted the writ and reviewed the justice court's action.
Since we reverse and remand on these grounds, we do not
reach the constitutional issue.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

-11-