No. 97-019
IN THE SUPREME COURT OF THE STATE OF MONTANA
1997


BURNT FORK CITIZENS COALITION, an unincorporated association,

Petitioner and Respondent,

v.

BOARD OF COUNTY COMMISSIONERS OF RAVALLI COUNTY,
a body politic and political subdivision of the State of Montana,

Respondent and Appellant,

and

DENNIS MORGAN, TRUSTEE OF AMPAC MANAGEMENT, INC.,
PROFIT SHARING PLAN,

Intervenor-Respondent and Appellant.



APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Norman H. Grosfield, Utick & Grosfield, Helena, Montana
(for Board of County Commissioners of Ravalli County)

Martin S. King; Worden, Thane & Haines; Missoula, Montana
(for Dennis Morgan, Trustee of AMPAC Management, Inc.)

For Respondent:

William A. Rossbach and Elizabeth A. Brennan; Rossbach & Whiston,
P.C.;
Missoula, Montana; and Karl J. Englund, Attorney at Law, Missoula,
Montana



Submitted on Briefs: May 30, 1997
Decided: December 30, 1997

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Petitioner Burnt Fork Citizens Coalition filed a petition for writ of review in the District Court for the Twenty-First Judicial District in Ravalli County after the respondent Board of County Commissioners of Ravalli County conditionally approved the subdivision proposal submitted by intervenor-respondent Dennis Morgan.  After a hearing, the District Court granted Burnt Fork's writ of review and held that the conditional approval was "annulled and set aside."  Morgan and the Board appeal.  We affirm the order of the District Court.

There are two issues on appeal:

1.  Did the District Court err when it held that the Board was obligated to apply the county subdivision regulations and that the regulations had not been impliedly repealed by the Montana Subdivision and Platting Act, õ 76-3-608(3)(a), MCA (1993)?

2.  Did the District Court err when it found that the Board had exceeded its jurisdiction when it considered the subdivision proposal without the satisfaction of certain conditions precedent?

FACTUAL BACKGROUND

Dennis Morgan owns a 191-acre tract of land in northeast Ravalli County.  In 1994, he submitted a proposal to the Ravalli County Board of County Commissioners ("Board") to develop a 32-lot subdivision on the land, known as Burnt Fork Meadows.  The Board denied the proposal, but expressly stated that Morgan could resubmit a revised proposal and offered him general direction about what aspects of the proposal to revise.

In the spring of 1995, Morgan submitted a second Burnt Fork Meadows subdivision proposal which included twenty lots.  In addition to the preliminary plat, Morgan submitted a number of supplemental materials to support his proposal, pursuant to the Ravalli County Subdivision Regulations.  On July 12, 1995, the Ravalli County Planning Board held a public hearing to accept public comment on the proposed subdivision, in accordance with the County Subdivision Regulations.  A number of citizens spoke at the hearing, almost all of whom expressed opposition to the subdivision for a variety of reasons.  The Planning Board, which acts in an advisory capacity to the Board, voted at the meeting to recommend to the Board that the proposed subdivision be denied.  A few days later, the chair of the Planning Board communicated in a memo to the Board its findings from the hearing and "strongly recommend[ed]" that the Board deny the subdivision.

Despite the Planning Board's recommendation, the Board conditionally approved

the Burnt Fork Meadows subdivision on August 11, 1995. The Subdivision Regulations of Ravalli County provide that the basis of a decision by the Board to approve or disapprove a subdivision shall be whether the information submitted has demonstrated that the subdivision would be in the public interest. The Regulations also state that any subdivision not in the public interest shall be disapproved and that, as part of its decision, the Board shall include written findings regarding eight criteria for determining public interest. The Board's conditional approval made written findings regarding only five of the eight criteria. All of those indicated that the subdivision would have a negative effect on the public interest.

On September 11, 1995, Burnt Forks Citizens Coalition, an unincorporated association of interested citizens, filed a petition for writ of review in the District Court. The Coalition asserted in an amended petition that the Board failed to follow the County Subdivision Regulations and that in doing so it acted in excess of its jurisdiction when it approved the subdivision. Morgan moved to intervene, and the District Court granted his motion on October 27, 1995. He later moved to dismiss the petition for, among other things, its failure to state a claim. After the parties briefed the issue, the District Court denied the motion to dismiss on July 26, 1996.

A hearing was held on August 29, 1996. Following the hearing, the parties submitted briefs regarding the implied repeal of the County Subdivision Regulations by the amended Montana Subdivision and Platting Act, õ 76-3-608(3)(a), MCA (1993). On October 30, 1996, the District Court held that the County Subdivision Regulations had not been repealed and that the Board's approval failed to comply with the Subdivision Regulations. Therefore, it granted the petition for writ of review and ordered that the conditional approval be "annulled and set aside."

ISSUE 1

Did the District Court err when it held that the Board was obligated to apply the county subdivision regulations and that the regulations had not been impliedly repealed by the Montana Subdivision and Platting Act, õ 76-3-608(3)(a), MCA (1993)?

We review a district court's conclusions of law to determine whether its interpretation of the law is correct. See Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; see also Kreger v. Francis (1995), 271 Mont. 444, 447, 898 P.2d 672, 674; Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

The Montana Subdivision and Platting Act requires that local governing bodies adopt regulations for the development of subdivisions within their jurisdiction. See õ 76-3-501, MCA. Pursuant to the Act, the Board of County Commissioners of Ravalli County adopted regulations to review proposed subdivision plats in 1985. Until 1993,

the County Regulations mirrored the Act; each required that the Board weigh eight criteria to determine whether the proposed subdivision would be in the public interest.

The criteria included: "(a) the basis of the need for the subdivision; (b) expressed public opinion; (c) effects on agriculture; (d) effects on local services; (e) effects on taxation; (f) effects on the natural environment; (g) effects on wildlife and wildlife habitat; and (h) effects on the public health and safety." Section 76-3-608(2), MCA (1985); see also Ravalli County Subdivision Regulations, Section II.A.10.

The 1993 Montana Legislature, however, amended the Act, so that local governing bodies were required to review only five criteria. They included: "the effect on agriculture, local services, the natural environment, wildlife and wildlife habitat, and public health and safety." Section 76-3-608(3)(a), MCA (1993). The Board, at the time of its review of the Burnt Fork Meadows subdivision, had not amended its County Regulations to conform to the amended 1993 Act, and still listed eight criteria for review.

Here, in an attempt to justify the Board's consideration of only the five criteria in the amended 1993 Act, the Board and Morgan assert that the County Regulations, as they existed in 1995, conflicted with the Act, and therefore, that the County Regulations had been impliedly repealed and replaced by the amended 1993 Act. Accordingly, they contend that the Board, in fact, complied with the County regulations, since the County regulations, like the Act, required that the Board make findings regarding only five criteria, and not the eight criteria listed in the "outdated" County Regulations. We disagree.

There is no question that the Board is required to review and either approve or disapprove a subdivision proposal pursuant to the terms of the County Regulations in effect at the time that the proposal is submitted. See õ 76-3-501(2), MCA. It is also undisputed that the County Regulations, as they existed at the time of Morgan's Burnt Fork Meadows proposal, required the Board to review and make written findings on eight criteria to determine the public interest. Based on õ 76-3-501(2), MCA, the Board may not ignore its own County Regulations and apply just the terms of the Act to review and conditionally approve a proposed subdivision. Rather, we hold that it is bound to follow the County Regulations in effect at the time that the proposal is made.

The Board and Morgan assert that the County Regulations "conflicted" with the amended 1993 Act because they included criteria that the Legislature had expressly removed from the Act and that the County Regulations were therefore impliedly repealed. They rely on State ex rel. Swart v. Casne (1977), 172 Mont. 302, 308-09, 564 P.2d 983,

986, in which we stated: "This grant of authority does not include the right to promulgate regulations in direct conflict with the Act. . . . An administrative agency is not a 'super legislature' empowered to change statutory law under the cloak of an assumed delegated power." Swart held that where the Act specifically provided for an exemption, a state agency could not develop regulations that eliminated the exemption. However, their reliance on Swart and their consequent claim that the County Regulations "directly conflict" with the Act is unfounded.

Unlike the state agency in Swart, county governments have extensive powers pursuant to the Montana Constitution. See Art. XI, Sec. 4, Mont. Const. ("A county has legislative, administrative, and other powers provided or implied by law. . . . [which] shall be liberally construed."). In State ex rel. Dreher v. Fuller (1993), 257 Mont. 445, 450-51, 849 P.2d 1045, 1048, which also involved the Act, we explained that an agency's authority is limited by the specific and definite guidance from the Legislature, while a county governing body, which often has separate legislative authority and is accountable to its constituents, requires less guidance. Accordingly, the Act's mandate to local governing bodies to assert local control and to develop their own subdivision regulations clearly contemplates that counties are free, pursuant to their legislative authority, to promulgate regulations which do not necessarily conform exactly to the Act, so long as they do not conflict with it. See Dreher, 257 Mont. at 451, 849 P.2d at 1049 ("[A] regulation which establishes procedures . . . gives substance to the Act's policy of local government control.").

If we consider the amended 1993 Act as a whole, we further note that local governing bodies are not necessarily required to maintain their subdivision regulations in precise accordance with the language of the Act. For example, õ 76-3-608(3), MCA (1993), states that proposals must be reviewed for the five "primary criteria," while earlier versions of õ 76-3-608, MCA, made no attempt to designate the eight criteria as primary in relation to other criteria that local governing bodies might consider. In addition to the provision that names the five primary criteria, the amended 1993 Act added a provision that requires local governing bodies to review a proposed subdivision for its "compliance with the local subdivision regulations provided for in part 5 of [the Act]." Section 76-3-608(3)(b)(ii), MCA (1993). This clearly indicates that the Act expects local regulations to be able to supplement the five requirements in õ 76-3-608(3)(a), MCA (1993). Finally, the Act prior to and after the 1993 amendments refers to state standards as "minimum" requirements for local subdivision regulations and

the
need for local regulations to be "consistent with [the Act]." Section 76-3-504(2), MCA.

We find clear evidence in the Act that local regulations need not be in precise conformity with the Act.  The clear intent is that local governing bodies be able to develop their own local subdivision regulations that are consistent with the Act, and that
the Act establishes minimum requirements that local governing bodies must follow. Mere
difference between the County Regulations and the Act is insufficient grounds on which
to assert that the County Regulations conflict with the Act and effectuate their implied
repeal by the Act.

Nonetheless, we recognize that some local subdivision regulations may significantly
conflict with the Act so as to undermine the legality of the local regulations. Where differences between statutes exist, the earlier statute may be impliedly repealed by the
later one if they are "plainly and irreconcilably repugnant to or in conflict with each
other."  W.R. Grace & Co. v. Department of Revenue (1989), 238 Mont. 439, 450, 779 P.2d 470, 476.

Here, the County Regulations merely hold subdivision proposals to a stricter set of criteria than the Act requires.  As stated above, the Act contemplates that local bodies
be able to establish a review process that is particular to their own jurisdiction. The
County Regulations expand on the Act's minimum requirements and preserve a stricter review process for proposed Ravalli County subdivisions, which is consistent with the policy of local government control and suggests no threat to the Act.  See Dreher, 257
Mont. at 451, 849 P.2d at 1049.  Accordingly, we conclude that the County Regulations are not plainly and irreconcilably repugnant to or in conflict with the Act. Therefore,
they are not impliedly repealed by the amended 1993 Act and the Board was bound to make findings on the eight criteria in the County Regulations.

ISSUE 2

Did the District Court err when it found that the Board had exceeded its jurisdiction when it considered and conditionally approved the subdivision proposal without the satisfaction of certain conditions precedent?

This matter came before the District Court as a petition for writ of review. Section 27-25-102(2), MCA, authorizes a district court to grant a writ of review "when
a lower tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction of the tribunal, board, or officer and there is no appeal or, in the judgment
of the court, any plain, speedy, and adequate remedy."

The parties here do not contest the writ based on the adequacy of the remedy available to the Coalition.  Rather, the Board and Morgan assert that even if the Board
was bound to review the proposed subdivision according to the eight criteria in the

County Regulations, its failure to do so and its subsequent conditional approval in light of the findings did not amount to an act that exceeded its jurisdiction. Therefore, we must determine if the Board's conditional approval of the subdivision constitutes an exercise of authority beyond its jurisdiction.

In Buffalo v. Thiel (1984), 213 Mont. 280, 691 P.2d 1343, we were called upon to analyze a tribunal's authority or jurisdiction under circumstances analogous to those in this case. In that case, Myron Buffalo was sued in justice court by Jerry Thiel for damage to a motel room based on a theory of implied contract. The justice court issued an ex parte pre-judgment attachment of a pickup in Buffalo's possession and the truck was impounded. Buffalo filed a petition for writ of certiorari or review in the district court, which concluded that it had no authority to review the pre-judgment attachment. On appeal, we held that certiorari or review, as provided for by õ 27-25-102, MCA, is appropriate where a tribunal acts without jurisdiction, but that it cannot be employed to correct errors within a tribunal's jurisdiction. See Buffalo, 213 Mont. at 284, 691 P.2d at 1345. We stated that:

In this sense, the lack of jurisdiction must be distinguished from an erroneous decision made by a court in exercising the jurisdiction it possessed. 20 Am.Jur.2d Courts Section 90. If a court is acting within its jurisdiction, it has the power to decide erroneously as well as correctly. Johnston v. Marsh (3rd Cir. 1955), 227 F.2d 528.

Buffalo, 213 Mont. at 284, 691 P.2d at 1345.

We noted, however, that:

The area of difficulty arises, as in this case, where an inferior court has both subject matter and personal jurisdiction, and is acting under a particular statute conferring jurisdiction to act only in certain circumstances. The inquiry in such a case is to whether all of the conditions precedent to such jurisdiction are present. The presence or absence of such "jurisdictional facts" is determinative of whether the lower court acted with and within its jurisdiction.

Buffalo, 213 Mont. at 285, 691 P.2d at 1345.

We noted that a justice court's authority to issue a writ of attachment was dependent by statute on submission of an affidavit which establishes that the defendant is indebted to the plaintiff based on a contract for the direct payment of money and that the contract at issue in that case was clearly not one for the direct payment of money. For that reason, we held that the justice court had not satisfied a condition precedent to the exercise of its jurisdiction and that the district court erred when it denied Buffalo's

petition for a writ of certiorari.

A similar situation exists in this case. By both statute and regulation, there were
limitations on the Board's jurisdiction or authority to approve a subdivision application.
Section 76-3-501(2), MCA, provides that "[r]eview and approval or disapproval of a
subdivision under [the Act] may occur only under those regulations in effect at the time
an application for approval of a preliminary plat or for an extension under 76-3-610 is
submitted to the governing body."

In other words, the Board was limited by statute from acting on an application
absent compliance with its own regulations. The Subdivision Regulations of Ravalli
County which were in effect on the date of the intervenor's application provided as follows:
The governing body shall disapprove any subdivision which it finds not to
be in the public interest. To determine whether the proposed subdivision
would be in the public interest the governing body shall issue written
findings of fact which weigh the following criteria for public interest:

    a.   The basis of need for the subdivision;
    b.   Expressed public opinion;
    c.   Effects on agriculture;
    d.   Effects on local services;
    e.   Effects on taxation;
    f.   Effects on the natural environment;
    g.   Effects on wildlife and wildlife habitat and;
    h.   Effects on the public health and safety.

The Board made no findings regarding the need for the subdivision, expressed
public opinion, or its effects on taxation. Of those findings that the Board did make,
none of them established that the development was in the "public interest" based on the
criteria considered. For example, the Board found:

1.   "[T]he cumulative impacts [of this subdivision] will have a negative long-term impact on the local farming economy."

2.   "[I]t is expected that there will be negative effects of this subdivision on the
continued operation of existing agricultural activities."

3.   "This subdivision will negatively effect [sic] the provision of county-wide
public services as they are provided at this time."

4.   "The development of these lots will result in additional air pollution related
to vehicular and home heating emissions."

5.   "Until additional school facilities can be assured, a subdivision of this
magnitude would substantially and immediately jeopardize the quality of education of
those students currently enrolled and the additional students from this subdivision."

6.   "[T]his proposed subdivision in this area will have a negative impact on
wildlife populations and habitat."

7.   "Police protection is available, but would be severely limited due to
response time and available personnel."

We conclude that the District Court did not, as the appellants contend, simply

review the Board's decision to determine whether it was correct. If the Board had made findings that the subdivision was in the "public interest" and the District Court had concluded, based on the evidence, that those findings were in error, the appellants' argument would have some merit. However, in this case, the Board's own findings were that the applicant for subdivision approval had failed to meet the statutory prerequisite for approval. In the language of our decision in Buffalo, the condition precedent to the Board's authority to approve, or even conditionally approve, the application for subdivision approval had not, based on the Board's own findings, been satisfied.

We therefore conclude that the District Court did not err when it held that the Board exceeded its jurisdiction when it considered and conditionally approved the subdivision of Burnt Fork Meadows, and when the court, on that basis, "annulled and set aside" conditional approval of that application.

For these reasons, the order and judgment of the District Court are affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ KARLA M. GRAY