# FILED

May 22 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 08-0045

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 182

CITIZENS FOR RESPONSIBLE DEVELOPMENT,
an unincorporated association, and
DAN SLOAN, an individual,

   Petitioners and Appellants,

  v.

THE BOARD OF COUNTY COMMISSIONERS
OF SANDERS COUNTY, a body politic and
a political subdivision of the State of Montana,

   Respondent and Appellee,

  and

THE LAKES OF HERON MONTANA, LLC,
a Montana Limited Liability Company,

   Respondent-Intervenor and Appellee.

APPEAL FROM: District Court of the Twentieth Judicial District,
      In and For the County of Sanders, Cause No.
      Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

   For Appellants:

     Jack R. Tuholske; Tuholske Law Office, P.C.; Missoula, Montana

     David Kim Wilson, Jr.; Reynolds, Motl & Sherwood; Helena, Montana

For Appellees:

Allen B. Chronister; Harlen, Chronister, Parish & Larson, P.C.; Helena, Montana

Nathan G. Wagner; Sullivan, Tabaracci & Rhoades, P.C.; Missoula, Montana

_____

Submitted on Briefs: February 11, 2009

Decided: May 22, 2009

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Lakes of Heron Montana, LLC (Developer) presented a preliminary plat application for a major subdivision to the Board of County Commissioners of Sanders County (Board). Citizens for Responsible Development (CRD) and Dan Sloan appealed the Board's approval of the preliminary plat to the Twentieth Judicial District Court, Sanders County. They now appeal the District Court's grant of summary judgment in favor of the Board and Developer. We reverse.

¶2 The issue presented is whether the Board's approval of the preliminary subdivision plat was unlawful, arbitrary, or capricious.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Heron is an unincorporated town which lies in an idyllic setting on the banks of the Clark Fork River near the Idaho border. It possesses positive qualities which are characteristic of many small, rural communities within the Treasure State. Some of its more unique attributes entered into the consideration of the Developer's application for a subdivision of significant size. On the primary access road to Heron is a single-lane bridge over the Clark Fork River that the Montana Department of Transportation previously described as "functionally obsolete." The record indicates that the local fire department has aging members and has had as few as two volunteer members respond to calls. The police force is considered inadequate for existing needs. The location of the development, adjacent to the Clark Fork River, raised questions about the potential impact upon the River and the alluvial aquifer next to it. Appellant CRD is a group of Heron citizens opposed to the Lakes at Heron subdivision which provided extensive

3

public comment during the application process. Appellant Dan Sloan owns land near the proposed subdivision that could be affected by the proposed development.

¶4      The Developer sought to divide a 147 acre parcel into an 84 lot subdivision that would lie adjacent to the town of Heron and the Clark Fork River. Pursuant to the Montana Subdivision and Platting Act (MSPA) and the Sanders County Subdivision Regulations (SCSR), the Developer submitted a preliminary plat application and environmental assessment (EA) to the Board. The record is unclear about the specific date the Developer initially submitted the application, but it was last explicitly revised in March 2006. Similarly, the Developer revised the document labeled as the EA several times, the last time being December 21, 2005.

¶5      The Board held public hearings on the Developer's application on March 14, May 4, and November 17, 2006. In written comments submitted on May 4, CRD asserted, in addition to other arguments against the subdivision, that the analysis of potential impacts provided by the application was deficient. On May 25, the Board requested that "a traffic access/impact study be conducted" which would "specifically detail impacts on the Heron bridge . . . ." In response to this request and to other public comments, the Developer submitted a Traffic Impact Study, Heron Bridge Study, Storm Drainage Report, Stormwater Analysis, Nondegradation Analysis and a Wildlife Assessment. The Developer submitted most of these professionally prepared reports between the March and November 2006 public hearings. CRD renewed its assertion that the EA was still insufficient after this additional information had been submitted.

4

¶6 The Board issued findings of fact and conclusions and approved the preliminary plat application, including conditions, in December 2006. CRD then filed an action challenging the Board's approval in the District Court, and the Developer intervened. All parties moved for summary judgment and the District Court granted summary judgment in favor of the Board and Developer. Additional facts will be discussed herein.

## STANDARD OF REVIEW

¶7 We review a district court's grant of summary judgment de novo. *Abraham v. Nelson*, 2002 MT 94, ¶ 9, 309 Mont. 366, 46 P.3d 628.

¶8 Section 76-3-625(2), MCA, authorizes an appeal of a governing body's decision to "approve, conditionally approve, or deny an application and preliminary plat for a proposed subdivision" to the district court. The district court must determine if the governing body's decision was arbitrary, capricious, or unlawful. *Madison River R.V. Ltd. v. Town of Ennis*, 2000 MT 15, ¶ 30, 298 Mont. 91, 994 P.2d 1098; *Kiely Constr., LLC v. City of Red Lodge*, 2002 MT 241, ¶ 69, 312 Mont. 52, 57 P.3d 836. "While the standard of review we have adopted utilizes three terms, it breaks down into two basic parts. One part concerns whether the agency action could be held unlawful, and the other concerns whether it could be held arbitrary or capricious." *North Fork Preservation Assn. v. Dept. of State Lands*, 238 Mont. 451, 459, 778 P.2d 862, 867 (1989).

## DISCUSSION

**¶9** ***Was the Board's approval of the preliminary subdivision plat unlawful, arbitrary, or capricious?***

**¶10** CRD argues that the Board's approval of the preliminary plat was unlawful because the Board failed to follow procedural requirements, particularly with regard to the completeness of the EA. CRD argues that a complete EA must be submitted at the time the application is filed and that the Board cannot "accept reams of additional information dribbling in for months after the EA was prepared and deem such information part of the EA" and therefore the Board "had a duty to reject the EA as being incomplete under § 76-3-604(2)(b), MCA as well as its own regulations." Additionally, CRD argues that, even if all the information submitted by the Developer was to be considered, the application nonetheless failed to satisfy the content requirements for an EA.

**¶11** The Board and the Developer argue that a developer can, pursuant to statute, supplement the EA during the application process. The Board argues that "[i]n the real world of subdivision review by local government entities, there are often multiple requests to the developer for additional information after the application is filed" and that "the relevant information submitted to the County, whether specifically called an 'EA' or contained in subsequent submissions, served the same purpose and ultimately addressed the things that appellants find lacking." The Developer argues that CRD's assertions are "semantic" because they would render an application defective for a developer's mere failure to designate or label supplemental materials submitted during the review process

6

as part of the EA. The Board and Developer argue that procedural requirements for review of the application were sufficiently followed in this case and that the information provided during the process by the Developer satisfied EA content requirements.

¶12 The MSPA provisions which govern review of a major subdivision application are interrelated and extensively cross-referenced. Section 76-3-501, MCA, requires governing bodies to adopt local subdivision regulations providing for "adequate transportation, water, and drainage" and the "avoidance of subdivisions that would involve unnecessary environmental degradation and danger of injury to health, safety, or welfare by reason of natural hazard, including but not limited to fire and wildland fire, or the lack of water, drainage, access, transportation, or other public services or that would necessitate an excessive expenditure of public funds for the supply of the services." Section 76-3-504, MCA, requires the local regulations to "list the materials that must be included in a subdivision application" and "require the subdivider to submit to the governing body an environmental assessment as prescribed in 76-3-603." In turn, § 76-3-603, MCA, provides, in part:

> When required, the environmental assessment must accompany the subdivision application and must include:
>
> (1) for a major subdivision:
>
> (a) a description of every body or stream of surface water that may be affected by the proposed subdivision, together with available ground water information, and a description of the topography, vegetation, and wildlife use within the area of the proposed subdivision;
>
> (b) a summary of the probable impacts of the proposed subdivision based on the criteria described in 76-3-608; and

7

(c) a community impact report containing a statement of anticipated needs of the proposed subdivision for local services, including education and busing; roads and maintenance; water, sewage, and solid waste facilities; and fire and police protection; and

(d) additional relevant and reasonable information related to the applicable regulatory criteria adopted under 76-3-501 as may be required by the governing body;

The "criteria described in 76-3-608" referenced in this statute require, in part, that the governing body review a subdivision proposal for "the impact on . . . local services, the natural environment, wildlife and wildlife habitat, and public health and safety." Section 76-3-608(3)(a), MCA.

¶13 Section 76-3-604, MCA, establishes procedures for a governing body's acceptance and review of a subdivision application. Section 76-3-604(1), MCA, requires a governing body to determine and then notify the applicant whether the application contains all of the "materials" or "elements" required under the local regulations promulgated pursuant to § 76-3-504, MCA, and to identify the applicant of any missing elements. Then, within fifteen days of notifying an applicant that the application contains the required elements, subsection 604(2) requires the governing body to "determine whether the application and required elements contain detailed, supporting information that is sufficient to allow for the review of the proposed subdivision" under the statutes and local regulations, and to notify the applicant of that determination. Section 76-3-603, MCA, provides that "[w]hen required, the environmental assessment must accompany the subdivision application," and the SCSR likewise required the EA to be filed with the application. *See* SCSR II-B-1(d). Subsection 604(2)(c) explains that the governing

8

body's acceptance of an application as sufficient for review does not mean the application will be approved, nor that the body may not request additional information during the review process. Within sixty days of providing the notice to the applicant required by subsection 604(2), the governing body "shall approve, conditionally approve, or deny the proposed subdivision," unless other circumstances as detailed in that provision are present. Section 76-3-604(4), MCA.

¶14 Section 76-3-605, MCA, generally requires a governing body to hold at least one public hearing before determining to approve, conditionally approve or deny a subdivision application. Section 76-3-615, MCA, provides that if "new information"—defined essentially as information which has not been considered by the governing body or which the public has not had a reasonable opportunity to examine and offer comment upon—is received, then the governing body must hold a subsequent public hearing to consider the new information, unless the governing body determines that the new evidence is either "irrelevant or not credible."

¶15 The District Court considered all of the information submitted by the Developer to be part of the EA and found that the Board's approval of the preliminary subdivision plat was not unlawful. However, a simple review of all the information the Board had before it when it approved the preliminary plat ignores the procedural issues raised by CRD regarding the timing of and manner in which the information had been provided, and whether the process requirements of the MSPA had been satisfied thereby.

¶16 CRD's argument that the initially-submitted EA must contain all information that could be potentially relevant to the governing body's review of the subdivision, and that

9

the applicant cannot supplement the EA by providing additional information during the review process, is not consistent with the MSPA. Section 76-3-604(2)(c), MCA, specifically contemplates that the governing body may request additional information.

¶17 However, as noted above, § 76-3-604(2), MCA, required the Board to make an initial or "baseline" determination about whether the application contained sufficient information for review of the subdivision and to notify the Developer of this determination. This necessarily includes a determination of whether the EA contained sufficient information as well, because the EA, when one is required, must be submitted with the application pursuant to § 76-3-603, MCA. CRD has demonstrated that the Board failed to make this subsection 604(2) initial baseline determination to accept or reject the application and the EA, with appropriate notice to the Developer.

¶18 A governing body's determination pursuant to subsection 604(2) about the sufficiency of an application is a discretionary act to which appropriate deference will be given. Courts may not substitute their discretion for an agency's where the legislature has reposed discretion in an agency. *North Fork*, 238 Mont. at 457, 778 P.2d at 866 (quoting *Langen v. Badlands Coop. State Grazing Dist.*, 125 Mont. 302, 308, 234 P.2d 467, 470 (1951)). However, we have held that "when an agency, because of a misinterpretation of its rule, does not exercise its discretion it abuses its discretion." *Clark Fork Coalition v. Mont. Dept. Envtl. Quality*, 2008 MT 407, ¶ 43, 347 Mont. 197, 197 P.3d 482. Because the Board did not exercise the discretion granted by subsection 604(2) to make an initial determination about the sufficiency of the application, we cannot give deference to the Board.

¶19   CRD's next contention is that the EA was inadequate because it did not contain the contents required by law, even if all of the information submitted by the Developer throughout the process is considered.  We first note that CRD uses expansive language to describe what it believes an EA must contain, arguing that an EA must be "comprehensive" and offer a variety of proposed solutions for all impacts a proposed subdivision may create.   CRD criticizes the failure of the Developer to conduct professional studies to verify certain assumptions the Developer made about the proposed subdivision, such as whether the new homes would be seasonal as opposed to fulltime.[1] However, while the review process is enhanced by additional information, and more information is surely better than less, the statutes do not impose upon an applicant the duty to satisfy a comprehensive "wish list" of analytical reports and studies, but to provide the "information that is sufficient to allow for the review of the proposed subdivision . . . ."  Section 76-3-604(2)(c), MCA.  The information sufficient for review of a subdivision will vary from case to case.   Nonetheless, we conclude that the EA submitted in this case was inadequate under the plain language of the statutes governing the EA.

¶20    Initially, we note that quantifying the EA submitted in this case so that its contents can be qualitatively assessed is a difficult task in itself.  The Developer organized the initially-submitted EA in a format set forth by the SCSR, rather than by subsection 603.

---

[1] During the review process before the Board, the Developer took exception to some of CRD's minute criticisms of the application, such as its complaint that the Developer's description of the area's "winter range" for wildlife did not specify the time of year that wildlife used this range. The Developer responded "winter range is used in winter."

Although this approach is understandable, the SCSR's requirements, while requiring information about a variety of relevant issues, do not match the requirements set forth in subsection 603. For example, the SCSR does not require an applicant to provide "a description of every body or stream of surface water that may be affected by the proposed subdivision." Section 76-3-603(1)(a), MCA. While § 76-3-504, MCA, as noted above, requires local regulations to "list the materials" to be included in an application, it also requires the EA to provide the information "prescribed in 76-3-603." Additionally, the Developer submitted a significant amount of information which was not identified as part of the EA, some of which was submitted at various times long after the initial EA was submitted. Although portions of this later-submitted material are pertinent to the EA, they are not organized to satisfy EA requirements, but rather address other specific concerns such as water testing and sanitation requirements under § 76-3-622, MCA. Thus, information which could be relevant to the EA is buried in documents created primarily for other purposes.

¶21 The District Court found that the statutory EA requirements pertaining to water bodies were satisfied by maps submitted by the Developer which identified the Clark Fork River and by information gleaned about the aquifer from test reports. While this information was helpful, the EA did not provide "a description of every body or stream of surface water that may be affected by the proposed subdivision, together with available ground water information," with "a summary of the probable impacts of the proposed subdivision." Sections 76-3-603(1), MCA. For example, the Developer did not describe the location of the aquifer, the current health of the water bodies, or whether the aquifer

12

and the Clark Fork interact. The water information provided was primarily directed at the testing requirements of § 76-3-622, MCA, and, even then, as the Board explained in its findings of facts, "[t]he information provided for compliance with MCA 76-3-622 information suffers from a lack of organization and clarity which results in confusion as to the interpretation and quality of the information provided." The Developer submitted a substantial amount of information about its plans for development, but the issue is whether "a summary of the probable impacts of the proposed subdivision" would have upon "local services, the natural environment, wildlife and wildlife habitat, and public health and safety" was provided. Sections 76-3-603(1)(b) and 608(3)(a), MCA. While one report surmises that the added amount of stormwater drainage is negligible and will be adequately handled, there is no summary of what impact the wells and wastewater systems will have on the aquifer and the Clark Fork—whether there would likely be no impact, some acceptable impacts, or serious impacts.

¶22 Subsection 603 also requires that an EA contain "a community impact report containing a statement of anticipated needs of the proposed subdivision for local services, including . . . roads and maintenance . . . and fire and police protection." Section 76-3-603(1)(c), MCA. The Board did request a traffic report assessing the impacts upon the Heron Bridge and the Developer did explain that "negotiations are on going [sic] to provide a water source [for fire protection] to help mitigate the impacts of this division." However, while the EA and accompanying materials explain that the fire and police services are insufficient for the current needs of the community, there is no summary of the probable impacts that the proposed subdivision, which could potentially double the

13

population of Heron, would have upon these already strained services. Would the anticipated growth in the number of local residents fostered by the new subdivision be served by existing services, or by an anticipated growth in local services, or would the subdivision exacerbate existing problems and further erode the ability to provide local services to all residents? The EA failed to provide "a summary of the probable impacts" upon these services. Section 76-3-603(1)(b), MCA.

¶23 The Montana Constitution provides that government agencies are to afford "such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law." Mont. Const. art. II, § 8. The procedural requirements under subsection 604 facilitate public participation by informing the public at what stage the application is in the process—whether the governing body is assessing the completeness of the application or whether the process has moved ahead to the governing body's consideration of the substantive merits of the application.[2]

¶24 Similarly, the EA enhances public participation by summarizing the above-mentioned impacts upon the local community which the public can then consider and respond to, whether in agreement or disagreement. Failure to provide this information, or failure to provide it in a reasonably cohesive fashion, makes it difficult for the public to use the information. The Board argues that the crucial point is whether the Board had

---

[2] Likewise, §§ 76-3-605 and 615, MCA, promote public participation by requiring a public hearing on the application and requiring subsequent public hearings if new information relevant to the body's decision is received. The Board here properly held multiple hearings to consider additional information received during the review process.

sufficient information before it. However, focusing on that point alone ignores the public participation purposes served by compliance with the statutory process.

¶25     The Board violated the procedural requirements of 604 by failing to determine that the application and EA satisfied the initial, baseline requirements necessary for review of the application. The EA was inadequate because it did not summarize the impacts required by the statutes, and because much of the relevant information was not provided in a cohesive format. Some of the blame for the EA's shortcomings can be traced to inconsistency between the local subdivision regulations and state statute, but nonetheless, section 603's requirements were not satisfied. Local governing bodies "are not necessarily required to maintain their subdivision regulations in precise accordance with the language of the [MSPA]." *Burnt Fork Citizens Coalition v. Bd. of Co. Commrs. of Ravalli Co.*, 287 Mont. 43, 48, 951 P.2d 1020, 1023-24 (1997). However, "[t]he subdivision regulations adopted under this chapter must, *at a minimum . . .* require the subdivider to submit to the governing body an environmental assessment as prescribed in 76-3-603." Section 76-3-504(1), MCA (emphasis added); *see also Burnt Fork*, 287 Mont. at 49, 951 P.2d at 1024 ("[T]he [MSPA] establishes minimum requirements that local governing bodies must follow.).

¶26     We conclude that the Board acted unlawfully. We do not conclude that the Board acted arbitrarily and capriciously. We hold that the Board's approval of the preliminary plat was unlawful for the failure to comply with the requirements of the statutes discussed herein. These statutory violations require reversal of the Board's decision to approve the

15

preliminary plat. Any future consideration of the subdivision application must, of course, be undertaken in accordance with state statute and local regulations.

¶27   As we have determined that the Board's decision should be voided, we need not address CRD's other arguments. We reverse and remand this matter to the District Court for entry of judgment in favor of the Appellants.

/S/ JIM RICE

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS