DA 12-0654

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 331

JEANETTE DIAZ and LEAH HOFFMANN-BERNHARDT,
Individually and on Behalf of Others Similarly Situated,

        Plaintiffs and Appellees,

  v.

STATE OF MONTANA,

        Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2008-956
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Robert C. Lukes, Garlington, Lohn & Robinson, PLLP,
Missoula, Montana

        For Appellees:

                Erik B. Thueson, Scott L. Peterson, Thueson Law Office,
Helena, Montana

                James G. Hunt, Jonathan McDonald, Dix, Hunt & McDonald,
Helena, Montana

Submitted on Briefs:  August 28, 2013
Decided:  November 6, 2013

Filed:

_____
                    Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 The State of Montana appeals from the District Court's Order filed June 19, 2012, denying the State's motion for summary judgment. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Plaintiffs Diaz and Hoffman-Bernhardt were covered by the State of Montana's employee healthcare benefit program established under Title 2, chapter 18, MCA (referred to as the Plan). The Plan is not subject to the insurance code, § 33-1-102(7), MCA, and is funded by the State as an employee benefit. It covers over 30,000 State employees, dependents, and retirees. *See generally Diaz v. Blue Cross and Blue Shield*, *et al.*, 2011 MT 322, 363 Mont. 151, 267 P.3d 756 (*Diaz I*). This case is before this Court upon the District Court's certification under M. R. Civ. P. 54(b), as to the portion of the June 19, 2012 order denying the State of Montana's motion for summary judgment.

¶3 The District Court applied *Diaz I* and *Blue Cross & Blue Shield v. State Auditor*, 2009 MT 318, 352 Mont. 423, 218 P.3d 475 and concluded that the State, operating the Plan, is an insurer for purposes of Title 2, chapter 18, MCA, and that a "coordination of benefits" provision in the Plan contravened the "made whole" requirement of § 2-18-902, MCA. The issue on appeal is whether the District Court properly concluded that the State's operation of the Plan is subject to the "made-whole" provisions in §§ 2-18-901 and -902, MCA.

¶4 For a period of years the Plan has contained the following provision:

2

The following services and expenses are not covered:

. . .

5. Expenses that a member is entitled to have covered or that are paid under an automobile insurance policy, a premise liability policy, or other liability insurance policy. This includes but is not limited to a homeowner's policy or business liability policy, or expenses that a member would be entitled to have covered under such policies if not covered by the State Plan.

The State refers to this as a "coordination of benefits" provision, designed to determine which is the primary and which is the secondary payer as between insurers. The intent of the provision is to have only one insurer pay any given claim such as a medical expense, so as to "exclude double payment."

¶5     Diaz was injured in an automobile accident in December 2006, and her medical expenses were covered by the Plan. The Plan paid her medical claims, one of which was a $195 claim paid to a naturopathic physician. The physician returned the payment to the Plan because the charge had been paid by the insurer of the other driver in the accident that injured Diaz. Hoffman-Bernhardt was injured in an automobile accident in September 2005 and her medical claims were covered by the Plan. In her case a medical care provider returned a claim payment to the Plan because the claim had been paid by another insurer. There is no dispute that all of the medical bills of both plaintiffs were paid by either the Plan or by third-party insurers. Diaz and Hoffman-Bernhardt assert that the Plan should not have retained the payments returned by the medical providers, but should have paid those amounts to them and was required to do so unless they had

3

been made whole or fully compensated for all losses they incurred as a result of the automobile accidents.

¶6     While the Plan did not assert express subrogation rights as against any other person or entity, the issue before the District Court was whether the Plan violated the provisions of §§ 2-18-901 and -902, MCA, by accepting the refunds from the medical providers.  Plaintiffs contend that the application of the Plan's coordination of benefits provision to allow the Plan to retain the refunds amounts to subrogation and that no insurer has a right to subrogation unless the insured is made whole for all losses.  The District Court agreed and denied the State's motion for summary judgment.

## STANDARD OF REVIEW

¶7     The parties agree that this Court reviews a summary judgment ruling de novo to determine whether it is correct.  *Citizens for Responsible Dev. v. Sanders County*, 2009 MT 182, ¶ 7, 351 Mont. 40, 208 P.3d 876.

## DISCUSSION

¶8     The issue on appeal is whether the District Court properly denied the State's motion for summary judgment.

¶9     Section 2-18-901, MCA, provides:

**Subrogation Rights.**  A disability insurance policy subject to this chapter may contain a provision providing that, to the extent necessary for reimbursement of benefits paid to or on behalf of the insured, the insurer is entitled to subrogation as provided for in 2-18-902, against a judgment or recovery received by the insured from a third party found liable for a wrongful act or omission that caused the injury necessitating benefit payments.

Section 2-18-902, MCA, provides:

4

**Notice—shared costs of third-party action—limitation.** (1) If an insured intends to institute an action for damages against a third party, the insured shall give the insurer reasonable notice of the intention to institute the action.

(2) The insured may request that the insurer pay a proportionate share of the reasonable costs of the third-party action, including attorney fees.

(3) An insurer may elect not to participate in the cost of the action. If an election is made, the insurer waives 50% of any subrogation rights granted to it by 2-18-901.

(4) The insurer's right of subrogation granted in 2-18-901 may not be enforced until the injured insured has been fully compensated for the insured's injuries.

"Disability insurance" is defined in § 33-1-207(1), MCA, and there is no dispute that the Plan is "disability insurance" as defined and that the State, through the plan, is an insurer. *Diaz I*, ¶¶ 16-17.

¶10 The issue on appeal is whether the made-whole requirement of § 2-18-902(4), MCA, applies to the Plan insofar as it has withheld payments or has retained payments returned by a healthcare provider, because the medical expense has been paid by a third party. The District Court, in denying the State's motion for summary judgment, held that the made-whole requirement applies.

¶11 Subrogation is a substitution of the legal right of one for another. *Skague v. Mtn. States T & T Co.*, 172 Mont. 521, 526, 55 P.2d 628, 630-31 (1977). In the case of insurance relationships, an insurer who pays for a loss incurred by the insured might have a subrogation claim against a recovery that the insured makes from a third party. This is provided for in § 2-18-901, MCA. Alternatively, an insurer may pay the loss incurred by the insured and then pursue reimbursement for that payment from a third party that is responsible for the loss. This is provided for in § 2-18-902, MCA. An important

5

component of subrogation under Montana law is that the party in the insurer's position may not seek subrogation based upon loss paid to an insured unless the insured has been "made whole" or fully compensated for all loss suffered. Section 2-18-902(4), MCA.

> [W]hen the insured has sustained a loss in excess of the reimbursement by the insurer, the insured is entitled to be made whole for his entire loss and any costs of recovery, including attorney's fees, before the insurer can assert its right of legal subrogation against the insured or the tortfeasor.

*Skague*, 172 Mont. at 528, 55 P.2d at 632.

¶12 In the present case the plaintiffs assert that the Plan was obligated to pay the amount of their medical expenses even if those expenses have already been paid by a third party. Plaintiffs contend that withholding payment for a medical expense because it has been paid by a third party amounts to de-facto subrogation, especially when the Plan did not undertake any analysis of whether the beneficiaries had been made whole for their loss. *Diaz I*, ¶¶ 4-6. The State asserts that utilization of a coordination of benefits provision does not constitute subrogation, and therefore does not require any made-whole analysis. Further, the State contends that the Plan should not be subject to the same rules as a traditional insurer.

¶13 In *Blue Cross*, this Court addressed a similar issue. In that case, coordination of benefits language in a Blue Cross and Blue Shield policy excluded coverage for any health care costs incurred by its insureds if they received or were entitled to receive payment of those costs from a third party's automobile or premises liability policy. The issue in that case was whether the coordination of benefits provision violated the made-whole requirement found in § 33-30-1102, MCA. This Court held that the legal effect of

6

the coordination of benefits provision was to allow Blue Cross and Blue Shield to exercise subrogation before paying anything to its insured. Therefore this Court held that utilization of the coordination of benefits provision violated the made-whole requirement of § 33-30-1102, MCA. *Blue Cross*, ¶ 19.

¶14 The same analysis applies to the present case. The coordination of benefits provision allows the Plan to exercise de facto subrogation by allowing the Plan to avoid payment for covered medical expenses without making any determination as to whether the beneficiaries have been made whole for their loss. The critical factor is the effect of the coordination of benefits provision, and the fact that it is not expressly referred to as "subrogation" is not determinative.

¶15 The next issue is whether the provisions of §§ 2-18-901 and -902, MCA, apply in this case. Section 2-18-901, MCA, provides that a "disability insurance policy subject to this chapter" may contain language allowing an insurer to exercise subrogation against a recovery received by the insured from a third party that caused the injury. Section 2-18-902(4), MCA, provides that the insurer's right of subrogation in § 2-18-901, MCA, "may not be enforced until the injured insured has been fully compensated for the insured's injuries." The State argues that the Plan is not subject to the Insurance Code found in Title 33, MCA, as discussed in *Diaz I,* ¶ 15, and is not an "insurer" as referred to in §§ 2-18-901 and -902, MCA.

¶16 Title 2, chapter 18, MCA, specifically provides for establishment of the Plan as an alternative to conventional insurance for State employees, § 2-18-812, MCA. In *Diaz I*, this Court concluded that for purposes of Title 2, MCA, the State operates as an "insurer"

7

when it provides benefits to its employees through the Plan. *Diaz I*, ¶ 17. We see no reason to deviate from this holding.

¶17 The issues in this case are governed by settled Montana law, which the District Court properly applied. The decision of the District Court is affirmed and this matter is remanded for further proceedings consistent with this Opinion.


/S/ MIKE McGRATH

We concur:


/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice Patricia Cotter, concurring.

¶18 I concur in the Court's Opinion. I write separately to state that my initial misgivings with Diaz's arguments were quelled by the fact that the Legislature was lobbied in both 2011 and 2013 to repeal §§ 2-18-901 and -902, MCA, and to authorize the coordination of benefits provision at issue in this case. In both years, the Legislature considered the arguments that the State makes here and rejected them. By 2013, the Legislature was presumably aware of our decisions in *Diaz I*, and *Blue Cross & Blue Shield of Mont. v. Mont. State Auditor*, and yet it purposely declined to take the very action that the State now implores this Court to take.

¶19 We have stated: "As a general rule, the Montana public policy is prescribed by the legislature through its enactment of statutes." *Fisher v. State Farm Mut. Auto. Ins. Co.*,

8

2013 MT 208, ¶ 25, 371 Mont. 147, 305 P.3d 861 (*citing Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, ¶ 32, 315 Mont. 107, 67 P.3d 892). Particularly apropos here, we have also held that "when an amendment is offered to a pending bill and rejected, the intention of the legislature is manifest that the law shall not read as it would if the amendment had been accepted, and the courts cannot do 'by construction what the legislature refused to do by enactment.' " *Murray Hosp. v. Angrove*, 92 Mont. 101,[1] 116, 10 P.2d 577, 583 (1932) (On Motion for Rehearing) (citations omitted).

¶20    I therefore concur.

/S/ PATRICIA COTTER

Justice Jim Rice, concurring.

¶21    I disagree that the coordination of benefits provision constitutes subrogation, *see* Opinion, ¶ 14, for the reasons set forth in my dissenting opinion in *Blue Cross* regarding the exclusion clause there at issue. *See Blue Cross*, ¶¶ 22-30 (Rice, J., dissenting). Specifically:

> [S]ubrogation arises only when there is a 'substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor.' *Thayer* [*v. Uninsured Employers' Fund*, 1999 MT 304, ¶ 17, 297 Mont. 179, 991 P.2d 447 (citation omitted)]. Here, subrogation never occurs because BCBS lacks any authority to substitute itself for the insured. BCBS has merely used the freedom of contract to exclude any coverage and thereby refuse to assume a risk. The provisions are clear and unambiguous: under the proposed policy, BCBS would be contracting with a customer for a single recovery, and basing the customer's premium thereon.

---

[1] Currently, this case is incorrectly reported by Lexis as 92 Mont. 10. The Court is attempting to have this corrected.

9

*Blue Cross*, ¶ 27. Again, another decision by this Court must be counted among the factors driving up the cost of health insurance, as the Court continues to ignore the design and structure of the insurance contract, and the premium upon which the contract was based, to redefine the subject provision as subrogation. This decision will have the effect of invalidating any number of additional setoffs and provisions by which the insurer avoids making double payments to providers of medical services. Premiums will have to be increased accordingly to account for the increased costs of payouts occasioned by this decision and by the additional setoffs that may be invalidated under this decision.

¶22 My dissenting opinion in *Diaz I* criticized the Court for issuing a "hidden holding," noting that the Court's discussion swept beyond the stated issue and leaped to a conclusion that the State was an "insurer," without so much as addressing the parties' arguments on that issue or even acknowledging that there were any arguments on the issue. *Diaz I*, ¶ 59 (Rice, J., dissenting). Now, the Court does it again by simply saying that this issue was already decided in *Diaz I*. *See* Opinion, ¶ 16. While I don't disagree that the issue was there decided, it remains an improper holding that resolves the case arbitrarily, without appropriate analysis of the legal arguments.

¶23 I made these arguments in the cited prior cases and lost the arguments each time. Because those holdings are now the governing authority, and only for that reason, I concur in the outcome the Court has ordered herein, and have signed the opinion.

/S/ JIM RICE

Justice Laurie McKinnon joins in the concurring Opinion of Justice Rice.

/S/ LAURIE McKINNON